**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COLORADO WILD PUBLIC LANDS, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES FOREST SERVICE, <br><br> Defendant. | Case No. 21-cv-2802 (CRC) |

**MEMORANDUM OPINION AND ORDER**

After weeks of negotiations, Plaintiff Colorado Wild Public Lands ("COWPL") and Defendant United States Forest Service (the "Forest Service") momentarily believed that they were on the cusp of settling COWPL's Freedom of Information Act ("FOIA") lawsuit. Within a few hours, however, the prospective settlement proved illusory, as the junior Assistant United States Attorney handling the case learned that he did not have his supervisors' approval to proceed. The parties returned to negotiations, which collapsed days later. Now, COWPL moves to enforce the proposed settlement agreement nearly consummated before the breakdown between the parties. Because the Court concludes that the AUSA representing the Forest Service never had the requisite authority to bind the government, the Court will deny the motion.

**I. Background**

In October 2021, COWPL, a non-profit organization that advocates for "transparency and public engagement in federal land exchanges," filed a FOIA complaint against the Forest Service, seeking records regarding a land exchange of National Forest lands in southwest Colorado. Complaint ¶¶ 1, 11. After the Forest Service moved for summary judgment in February 2022, the parties began discussing a possible settlement. Mot. to Enforce Settlement Agreement Ex. (ECF 20-11) at 1–3; see also Mot. to Enforce Ex. (ECF 20-12) at 1. In mid-May,

the attorney of record for the Forest Service—Assistant U.S. Attorney Bradley Silverman—told COWPL's counsel that the Forest Service was "on board" with a draft settlement but that he would need approval from his supervisor before he could execute any agreement. Mot. to Enforce Ex. (ECF 20-14) (emails from May 11 to 18).

On May 23, 2022, AUSA Silverman emailed the parties' proposed settlement agreement and two memorandums explaining the agreement to his supervisor, Heather Graham-Oliver, Deputy Chief of the Civil Division of the U.S. Attorney's Office for the District of Columbia. In the body of his email to Graham-Oliver, Silverman stated that "the parties think it makes sense to settle all issues other than attorney's fees by June 1, and then negotiate over attorney's fees and settle that separately. Would that be okay?" Opp. Ex. F (ECF 22-3 at 16). Graham-Oliver replied 35 minutes later, stating "Yes, that is okay." Id. Silverman somehow understood Graham-Oliver's response to signal her approval of the substance of the settlement agreement, as opposed to simply providing an answer to his question about settling merits and fees separately.

Three minutes after the email exchange with Graham-Oliver, Silverman emailed COWPL's counsel stating that his "supervisor has approved the settlement agreement," noting one change he had made to the last version of the agreement, and concluding: "If the attached agreement looks good to you, can you sign it and send it back to me? I'll sign it and we can inform the Court that we've settled everything but attorney's fees." Opp. Ex. G (ECF 22-3 at 18). COWPL's counsel replied that afternoon, informing Silverman that they "approve this final version with the change you proposed below" and giving Silverman "permission to file after your signature is added." Opp. Ex. H (ECF 22-3 at 20).

Before Silverman signed the agreement for the government, Graham-Oliver contacted him to express her misgivings about the draft agreement and to state that he was not authorized

to execute it.  Opp. at 4; see Declaration of Heather Graham-Oliver ("Graham-Oliver Declaration") ¶ 4 (ECF 22-2).  Immediately thereafter, Silverman called COWPL's counsel to tell them that he lacked authorization to settle, and the parties returned to their negotiations to salvage the agreement, exchanging several emails over the next two days.  Opp. Exs. J–M.

On May 25, Brian Hudak, Chief of the Civil Division, reviewed the settlement and informed AUSA Silverman it would need to be substantially rewritten.  Opp. Ex. M (ECF 22-3 at 38); see also Declaration of Brian P. Hudak ("Hudak Decl.") ¶¶ 1, 7–9.  Silverman then emailed COWPL's counsel, informing them that his "Civil Chief has said the entire settlement agreement needs to be rewritten to conform to the form of our template FOIA settlement agreement, and will not be approved otherwise."  Opp. Ex. M (ECF 22-3 at 38).  Realizing that "settlement of this case is not likely on terms that would satisfy Plaintiff, the agency Defendants, and the United States Attorneys' [sic] Office," the parties filed a joint motion for an extension of time to file cross motions for summary judgment.  Consent Mot. for Extension of Time (ECF 18) ¶ 14.

The Court ordered a status conference, at which COWPL's counsel stated that they believed the parties had reached a valid settlement when COWPL signed and returned the proposed settlement agreement to Silverman on May 23.  Accordingly, COWPL moved to enforce the settlement agreement, and the motion is ripe for the Court's consideration.[1]

## II. Legal Standards

"It is well established that federal district courts have the authority to enforce settlement agreements entered into by the litigants in cases pending before them."  Demissie v. Starbucks

---

[1] The Court also struck the Forest Service's pending motion for summary judgment without prejudice to refiling.  See Minute Order (June 3, 2022).

Corp. Off. & Headquarters, 118 F. Supp. 3d 29, 34 (D.D.C. 2015) (Ulliman Schutte Constr., LLC v. Emerson Process Mgmt. Power & Water Sols., No. 02–1987, 2007 WL 1794105, at *3 (D.D.C. June 19, 2007)).  The party moving to enforce a purported settlement agreement bears the burden of proving "by clear and convincing evidence that the parties reached a binding agreement."  Id.  In cases involving contracts with the government, the party alleging the existence of a contract also "must demonstrate that the government representative who entered or ratified the agreement had authority to bind the United States in contract."  United States ex rel. Morsell v. Symantec Corp., 130 F. Supp. 3d 106, 131 (D.D.C. 2015) (quoting Thermalon Indus., Ltd. v. United States, 34 Fed. Cl. 411, 414 (1995)); see also Perkins v. District of Columbia, 146 A.3d 80, 85 (D.C. 2016).  State contract law—in this case, the law of the District of Columbia—governs the enforcement of settlement agreements.  Whittaker v. United States, Civil Action No. 19-199 (CKK), 2021 WL 2913626, at *5 (D.D.C. July 12, 2021).

**III.  Analysis**

The Forest Service maintains that no enforceable settlement agreement exists because (1) AUSA Silverman lacked authority to settle the case in his May 23 email and (2) no contract was formed in any event because only COWPL signed the proposed agreement, evidencing a lack of mutual intent to be bound.  Opp. at 7–16.  Whether Silverman's May 23 email alone manifested a sufficient intent to be bound to the settlement agreement, even without a signature, is a somewhat close question.  But the Court need not decide that question because even if both COWPL and Silverman assented to the agreement, Silverman lacked the requisite authority to settle the case.  Accordingly, the Court will deny the motion to enforce the May 23 settlement agreement.

A. <u>Actual Authority</u>

To start, AUSA Silverman lacked actual authority to bind the United States government when he represented in his May 23 that the parties were cleared to execute the agreement.

The Court uses agency law principles to determine whether an actor has authority to bind a principal to a contract. <u>A-J Marine, Inc. v. Corfu Contractors, Inc.</u>, 810 F. Supp. 2d 168, 175 (D.D.C. 2011). In general, an agent acts with actual authority when, "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." <u>Id.</u> (emphasis omitted) (quoting Restatement (Third) of Agency § 2.01 (2006)). Actual authority can be either express or implied under the circumstances, "such as the relationship between the parties and conduct of the principal toward the agent manifesting the principal's consent to have the agent act for him." <u>Vantage Commodities Fin. Servs. I, LLC v. Willis Ltd.</u>, 531 F. Supp. 3d 153, 170 (D.D.C. 2021) (quoting <u>Sigal Constr. Corp. v. Stanbury</u>, 586 A.2d 1204, 1217–18 (D.C. 1991)), <u>aff'd sub nom.</u> <u>Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC</u>, 31 F.4th 800 (D.C. Cir. 2022). A government official possesses express actual authority to bind the United States "only when the constitution, a statute, or a regulation grants such authority to that agent in unambiguous terms" and possesses implied actual authority "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." <u>Monument Realty LLC v. Wash. Metro. Area Transit Auth.</u>, 535 F. Supp. 2d 60, 71 (D.D.C. 2008) (quoting <u>SGS-92-X003 v. United States</u>, 74 Fed. Cl. 637, 652 (2007)); <u>see also</u> <u>Perkins</u>, 146 A.2d at 85–86.

"Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is

5

reserved to officers of the Department of Justice, under the direction of the Attorney General."
28 U.S.C. § 516. As head of the Department of Justice, the Attorney General has the power to
"supervise all litigation to which the United States, an agency, or officer thereof is a party," and
to "direct all United States attorneys" and AUSAs "in the discharge of their respective duties."
Id. § 519; see id. § 510 (authorizing Attorney General to delegate authority to other Justice
Department employees). Accordingly, the Justice Department has "plenary power to settle any
case on such terms as the Attorney General sees fit," unless some other statute limits that
authority. Burton v. Adm'r, Gen. Servs. Admin., Civ.A. No. 89-2338, 1992 WL 300970, at *3
(D.D.C. July 10, 1992).

       The Attorney General has delegated some settlement authority to other actors within the
Justice Department. Subject to certain limitations, the Assistant Attorneys General are
authorized to settle claims falling below a certain monetary value as well as nonmonetary cases.
28 C.F.R. § 0.160(a). Assistant Attorneys General are themselves authorized to redelegate that
settlement authority to the United States Attorneys and other Justice Department officials. Id.
§ 0.168(a). Civil Division Directive No. 1-15 further delegates settlement authority under
specified circumstances to Deputy Assistant Attorneys General, United States Attorneys, Office
and Staff Directors, and Attorneys-in-Charge of Field Offices. See Civil Division Directive No.
1-15, published in 28 C.F.R. App'x to Subpt. Y of Pt. 0. As relevant here, and according to
declarations submitted by Brian P. Hudak and Heather Graham-Oliver, Chief and Deputy Chief
of the Civil Division of the U.S. Attorney's Office for the District of Columbia, non-supervisory
AUSAs in the Civil Division such as Mr. Silverman lack *any* delegated authority to settle cases
without specific approval by a Civil Division supervisory attorney or other Justice Department
official with settlement authority. See Hudak Decl. ¶¶ 2–4; Graham-Oliver Decl. ¶¶ 2–3.

6

Therefore, unless Silverman obtained authorization to settle the case with COWPL, he had no actual authority—either express or implied—to settle the case.

COWPL asserts that Silverman obtained the requisite approval of his supervisor, Deputy Chief Graham-Oliver, when she responded affirmatively to his May 23 email, in which he asked her whether it would be acceptable for the parties to settle the merits issues before separately addressing fees.  Reply at 3, 15.  But Graham-Oliver has submitted a declaration explaining that her response to Silverman's May 23 email "conveyed that I approved the general idea of settling as to liability now and attorney's fees later," not that she had "approve[d] the specific draft agreement that AUSA Silverman had attached to the email."  Graham-Oliver Decl. ¶ 4.  Graham-Oliver stresses that she "never authorized AUSA Silverman to execute any settlement agreement in this case."  Id. ¶ 5; see also Hudak Decl. ¶ 10 ("Because of my concerns with the draft agreement, I never authorized Mr. Silverman to execute the draft settlement agreement or any settlement agreement in this case.  Nor did any other Department official authorize Mr. Silverman to execute the settlement agreement.").  To bolster that conclusion, Graham-Oliver also points out that she never memorialized any approval of the proposed settlement agreement in a memorandum authorizing the settlement, as is consistent with Justice Department guidance.  See Graham-Oliver Decl. ¶ 5; see also U.S. Dep't of Just., Just. Manual § 4-3.300 (2018).

COWPL identifies no reason to doubt these declarations.  And the context surrounding Silverman and Graham-Oliver's email exchange underscores the implausibility of the theory that Graham-Oliver's May 23 email expressed her approval of the settlement agreement.  In his initial message, sent at 10:50 a.m., Silverman provided Graham-Oliver three Word documents— the draft settlement agreement and two memorandums discussing the settlement.  Opp. Ex. F (ECF 22-3 at 16).  The body of Silverman's email informed Graham-Oliver that "the parties

7

think it makes sense to settle all issues other than attorney's fees by June 1, and then negotiate over attorney's fees and settle that separately," asking "[w]ould that be okay?"  Id.  Graham-Oliver answered just 35 minutes later, at 11:25 a.m., from her iPhone, with the two-sentence response, "Yes, that is ok.  Thanks Brad."  Id.  The obvious and, by far, more reasonable interpretation of this response is that Graham-Oliver was answering only the question in the body of Silverman's email.  Graham-Oliver did not tell Silverman that "the settlement is ok" or "the draft is ok."  Rather, she stated only that "*that* is ok," the word "that" referring to Silverman's proposition that the parties deal with the merits and fees issues separately.  Although Silverman misinterpreted her message, it is implausible that Graham-Oliver could have reviewed all three Word documents from her mobile device and approved them all without edit or comment in 35 minutes.  Aside from this email exchange, COWPL has pointed to no other evidence that anyone with the required settlement authority ever delegated that authority to Silverman in this case.

      COWPL falls back on the argument that the Forest Service's approval of the agreement was sufficient to confer settlement authority on Silverman, regardless of his supervisors' disapproval.  Reply at 13–14.  But COWPL cites no authority for the proposition that the agency's approval of a settlement authorizes a junior AUSA who lacks delegated authority from the Attorney General to settle a matter and bind the United States government.  COWPL raises the unremarkable assertion that the "only proper[] defendant in a FOIA case is a federal agency." Reply at 12 (quoting Ginarte v. Mueller, 534 F. Supp. 2d 135, 136–37 (D.D.C. 2008)).  But the fact that the Forest Service, and not the Justice Department, is the defendant in this case does not alter the Attorney General's power to "supervise all litigation in which the United States, an agency, or officer thereof is a party" and to "direct United States attorneys" and "assistant United States attorneys in the discharge of their respective duties."  28 U.S.C. § 519.

COWPL also contends that Silverman should be presumed to have settlement authority by virtue of the fact that he is the Forest Service's attorney of record in the case. Reply at 7–8, 12–15. But even the cases on which COWPL relies emphasize that an attorney of record "may not compromise, settle, or consent to a final disposition of his client's case without express authority." Autera v. Robinson, 419 F.2d 1197, 1201 n.18 (D.C. Cir. 1969) (quoting Thomas v. Colo. Trust Deed Funds, Inc., 366 F.2d 136, 139 (10th Cir. 1966)). Moreover, those cases stand only for the proposition that "at most, . . . there is a presumption of an attorney's authority to settle a case," one that can be and has been rebutted here. Matzo v. Postmaster Gen., 685 F. Supp. 260, 262 (D.D.C. 1987). Accordingly, the Court concludes that Silverman lacked actual authority to settle this case during the brief period on May 23 when he told COWPL's counsel that he had supervisor approval to proceed.

B.  Apparent Authority

Aside from actual authority, COWPL also maintains that Silverman had apparent authority to finalize the settlement agreement after he erroneously informed COWPL's counsel that his supervisor had approved the agreement on May 23. Reply at 15–19. Under that theory, an agent may bind a principal "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency § 2.03 (2006). Thus, according to COWPL, Silverman's statement that he had supervisor authority to settle the case, even if erroneous, should bind the Forest Service nevertheless.

The Court agrees with the Forest Service, however, that "the doctrine of apparent authority generally does not apply to dealings with the Government." United States v. District of Columbia, 669 F.2d 738, 747 n.13 (D.C. Cir. 1981); accord Monument Realty, 535 F. Supp. 2d

9

at 70 ("Agreements made by government employees beyond the scope of their actual authority do not bind the government."); Kilpatrick v. Paige, 193 F. Supp. 2d 145, 153 (D.D.C. 2002); Littlejohn v. Wash. Metro. Transit Auth., Civ.A. No. 90-1724 (RCL), 1992 WL 122755, at *2 (D.D.C. May 28, 1992). This principle traces back at least to the Supreme Court's admonition in Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380 (1947), that "[w]hatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority," id. at 384. Applying this rule to facts analogous to this case, Kilpatrick v. Paige, 193 F. Supp. 2d 145 (D.D.C. 2002), held that "apparent authority does not bind government agencies," rejecting the argument that apparent authority saved a settlement agreement negotiated between a plaintiff and the Department of Education when the participating Department official lacked actual authority to bind the government, id. at 152–53.

Disputing this conclusion, COWPL principally relies on Burton v. Administrator, General Services Administration, Civ.A. No. 89-2338, 1992 WL 300970 (D.D.C. July 10, 1992). See Reply at 16–17. That reliance is misplaced. In Burton, the plaintiff in a discrimination suit sought to enforce a settlement agreement he reached with an AUSA. 1992 WL 300970, at *1. The AUSA had been authorized by the general counsel of the defendant agency—GSA—to settle the case, and the general counsel had sent the AUSA a proposed settlement agreement, which the plaintiff accepted. Id. at *1–2. After the agreement was consummated and the case voluntarily dismissed, other GSA officials voiced objections to the settlement, and the settlement fell apart. Id. at *2.

Contrary to COWPL's argument, Burton does not suggest that apparent authority binds the government. Rather, Burton held that the AUSA in that case had "acted entirely within her

authority when she proposed the telefaxed settlement terms to plaintiff"—that is, she had *actual* authority to settle the case. Id. at *4; see also id. (holding that the "record simply does not support" the government's argument that the AUSA "did not have *actual* authority"). The court rejected the government's argument that the settlement was invalid because it was not approved by the relevant GSA regional office. Id. at *3–4. But that holding was driven not by the conclusion that apparent authority was sufficient to bind the government but rather by the conclusion that (1) GSA had no requirement at the time that a regional office approve settlement agreements and (2) even if GSA had such a policy, the AUSA received the necessary approvals (and therefore had actual authority). Id. at *4–5. Moreover, contrary to COWPL's assertion that the only approval needed in this case was that of the Forest Service, see Reply at 18–19, Burton makes clear that the "Justice Department, in its capacity as representative of the United States, has broad authority to supervise and conduct litigation" and has "plenary power to settle any case on such terms as the Attorney General sees fit," 1992 WL 300970, at *3. Thus, Burton tends to support, rather than undermine, the government's position that AUSA Silverman lacked authority in this case because his supervisors with delegated settlement authority did not authorize him to approve the agreement.

Relying on out-of-circuit authorities, COWPL also asserts throughout its reply that the government, not it, bears the burden of showing that Silverman lacked the authority to settle this case on May 23. See Reply at 7–8, 14, 19 (first citing United States v. United States Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars, 423 F. Supp. 2d 14, 21 (E.D.N.Y. 2006); and then citing In re Artha Mgmt., Inc., 91 F.3d 326, 329 (2d Cir. 1996)). Authorities in this circuit, however, state that "the burden falls on the" party seeking to enforce the agreement "to establish that" the government agent "had the proper authority to enter into a

11

settlement agreement." Kirkpatrick, 193 F. Supp. 2d at 153; see also Morsell, 130 F. Supp. 3d at 131 (stating that the party alleging a contract "must demonstrate that the government representative who entered or ratified the agreement had the authority to bind the United States in contract" (quoting Thermalon, 34 Fed. Cl. at 414)). Either way, even assuming that the burden falls on the government (which the Court doubts), the Forest Service here has carried that burden here for the reasons explained above.[2]

Accordingly, because AUSA Silverman had neither actual nor apparent authority to agree to the proposed settlement exchanged on May 23, the Court will deny COWPL's motion to enforce the settlement agreement.[3]

---

[2] In so ruling, the Court is mindful, as COWPL notes briefly in reply, see Reply at 9 n.5, that when "there is a genuine dispute about whether the parties have entered into a binding settlement, the district court must hold an evidentiary hearing that includes the opportunity for cross-examination." United States v. Mahoney, 247 F.3d 279, 285 (D.C. Cir. 2001); accord Blackstone v. Brink, 63 F. Supp. 3d 68, 76 (D.D.C. 2014). But that rule applies only when there is a "genuine dispute" about the existence of a valid settlement agreement. Mahoney, 247 F.3d at 285. Here, aside from its interpretation of Deputy Chief Graham-Oliver's May 23 email—which the Court finds untenable—COWPL has identified no other evidence that AUSA Silverman had any inherent authority or had obtained delegated authority to agree to the settlement. The parties here do not present "two conflicting versions of the relevant events" but rather two conflicting interpretations of a single email. Hall v. George Washington Univ., No. Civ.A. 99-1136 (RMU), 2005 WL 1378761, at *5 (D.D.C. May 13, 2005). Nor has COWPL identified any basis to doubt the sworn declarations of two senior members of the U.S. Attorney's Office that neither Graham-Oliver, nor Civil Chief Hudak, nor any other supervisory attorney approved the draft agreement. Moreover, because the Court will not enforce the purported settlement agreement, this case does not implicate the animating concern behind holding an evidentiary hearing—avoiding the risk that the Court will overstep its limited "power to summarily enforce" only "complete settlement agreements whose existence is not disputed." Quijano v. Eagle Maint. Servs., 952 F. Supp. 1, 4 (D.D.C. 1997); accord Hall, 2005 WL 1378761, at *4.

[3] Although it is not the place of the Court to explore the parties' respective settlement positions, if it is correct that the parties' remaining disputes largely concerned the draft agreement's form and terms such as the scope of release, see Hudak Decl. ¶ 8, the Court wonders whether the parties may yet be able to reach a mutually acceptable settlement without summary judgment briefing. But that is a matter for the parties to resolve, or not. In the event that the parties are unable to reach a settlement, the Court sets the following renewed summary judgment briefing schedule: The Forest Service shall file its motion for summary judgment by December

IV. **Conclusion**

For these reasons, it is hereby

**ORDERED** that [Dkt. No. 20] Plaintiff's Motion to Enforce Settlement Agreement is **DENIED**.

**SO ORDERED.**

CHRISTOPHER R. COOPER
United States District Judge

Date: November 28, 2022

---

29, 2022. COWPL shall file its opposition and cross-motion for summary judgment by January 30, 2023. The Forest Service shall file its reply and opposition by February 13, 2023. And COWPL shall file its reply by February 27, 2023.

13