UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COLORADO WILD PUBLIC LANDS, | |
| *Plaintiff*, | |
| v. | Civil Action No. 21-2802 (CRC) |
| UNITED STATES FOREST SERVICE, | |
| *Defendant*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iii

STATEMENT OF FACTS ............................................................................................. 1

   A.   September 2020 FOIA Request (2020-FS-R2-06486-F) ................................... 2

   B.   March 2021 FOIA Request (2021-FS-R2-02802-F) ........................................ 3

   C.   May 2021 FOIA Request (2021-FS-R2-03896) ............................................. 3

LEGAL STANDARD ................................................................................................... 5

ARGUMENT ............................................................................................................... 5

   I.   Colorado Wild Did Not Exhaust Its Administrative Remedies As To The September
      2020 Request ........................................................................................... 6

   II.   The Forest Service Conducted An Adequate Search For Records Responsive To The
      March And May 2021 Requests .............................................................. 7

   III.  The Forest Service Properly Redacted Records Under Exemptions 5 And/Or 6 .............. 9

      A.   The Forest Service Properly Withheld Records Under Exemption 5 Based On
          The Deliberative Process Privilege ....................................................... 10

      B.   The Forest Service Properly Withheld Records Under Exemption 6 ..................... 14

          1.   The Forest Service Properly Withheld Cell Phone Numbers And An Email
              Address Belonging To Private Citizens ........................................... 15

          2.   The Forest Service Properly Withheld A Forest Service Employee's Work
              Cell Phone Number ....................................................................... 19

   IV.  The Forest Service Produced All Reasonably Segregable, Non-Exempt Information ..... 22

CONCLUSION........................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Baldwin v. Dep't of Energy,*
  Civ. A. No. 18-1872 (EGS), 2020 WL 376563 (D.D.C. Jan. 23, 2020) .................................. 15

*Ball v. U.S. Marshals Serv.,*
  Civ. A. No. 19-1230 (JEB), 2021 WL 4860590 (D.D.C. Oct. 19, 2021) .......................... 18, 20

*Bell v. Dep't of Defense,*
  Civ. A. No. 16-0959 (RC), 2018 WL 4637005 (D.D.C. Sept. 27, 2018) ............................... 21

*Benjamin v. Dep't of State,*
  178 F. Supp. 3d 1 (D.D.C. 2016) ....................................................................................... 5

*Braun v. Postal Serv.,*
  317 F. Supp. 3d 540 (D.D.C. 2018) ............................................................................. 15, 17

*Builders v. Norton,*
  309 F.3d 26 (D.C. Cir. 2002) ........................................................................................... 14

*Chelmowski v. United States,*
  Civ. A. No. 17-1394 (JEB), 2021 WL 3077558 (D.D.C. July 21, 2021) .................... 16, 18, 19

*Citizens Ass'n of Georgetown v. FAA,*
  896 F.3d 425 (D.C. Cir. 2018) ........................................................................................... 7

*Coastal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) ......................................................................................... 14

*Day v. Dep't of State,*
  Civ. A. No. 17-1418 (EGS), 2020 WL 1078955 (D.D.C. Mar. 6, 2020) ............................. 21

*Dep't of Interior v. Klamath Water Users Prot. Ass'n,*
  532 U.S. 1 (2001) ........................................................................................................... 13

*DiBacco v. U.S. Army,*
  795 F.3d 178 (D.C. Cir. 2015) ........................................................................................... 8

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.,*
  384 F. Supp. 2d 100 (D.D.C. 2005) ................................................................................. 21

*Food Mktg. Inst. v. Argus Leader Media,*
  139 S. Ct. 2356 (2019) ..................................................................................................... 9

**Cases (cont.)**

*Gov't Accountability Project v. Dep't of State*,
  699 F. Supp. 2d 97 (D.D.C. 2010) ............................................................. 16

*Hall & Assocs. v. EPA*,
  Civ. A. No. 19-1095 (RC), 2020 WL 4673411 (D.D.C. Aug. 12, 2020) ........... 14, 16

*Hidalgo v. FBI*,
  344 F.3d 1256 (D.C. Cir. 2003) ............................................................. 6, 7

*Hodge v. FBI*,
  703 F.3d 575 (D.C. Cir. 2013) ................................................................. 8

*Hunton & Williams LLP v. EPA*,
  346 F. Supp. 3d 61 (D.D.C. 2018) ........................................................... 15

*Iturralde v. Comptroller of the Currency*,
  315 F.3d 311 (D.C. Cir. 2003) ................................................................. 8

*Jordan v. Dep't of Justice*,
  591 F.2d 753 (D.C. Cir. 1978) ............................................................... 14

*Jud. Watch, Inc. v. Dep't of State*,
  Civ. A. No. 15-0688 (RC), 2017 WL 456417 (D.D.C. Feb. 2, 2017) ................. 16

*Judicial Watch, Inc. v. Dep't of Justice*,
  365 F.3d 1108 (D.C. Cir. 2004) ............................................................. 14

*Judicial Watch, Inc. v. FDA*,
  449 F.3d 141 (D.C. Cir. 2006) ............................................................... 14

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ................................................................. 7

*Lepelletier v. FDIC*,
  164 F.3d 37 (D.C. Cir. 1999) ............................................................. 15, 16

*Lesar v. Dep't of Justice*,
  636 F.2d 472 (D.C. Cir. 1980) ............................................................... 21

*Machado Amadis v. Dep't of State*,
  971 F.3d 364 (D.C. Cir. 2020) ........................................................ 6, 11, 13

*Maynard v. CIA*,
  986 F.2d 547 (1st Cir. 1993) ................................................................. 8

**Cases (cont.)**

*McGehee v. CIA*,
   697 F.2d 1095 (D.C. Cir. 1983) ................................................................................ 5

*Multi Ag Media LLC v. Dep't of Agric.*,
   515 F.3d 1224 (D.C. Cir. 2008) ............................................................................. 15

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
   879 F.2d 873 (D.C. Cir. 1989) ............................................................................... 17

*Nix v. United States*,
   572 F.2d 998 (4th Cir. 1978) ................................................................................. 20

*Oglesby v. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) ............................................................................. 7, 8

*Pejouhesh v. Postal Serv.*,
   Civ. A. No. 17-1684 (RDM), 2019 WL 1359292 (D.D.C. Mar. 26, 2019) ...................... 15, 17

*People for the Ethical Treatment of Animals v. Dep't of Health & Human Servs.*,
   901 F.3d 343 (D.C. Cir. 2018) ............................................................................. 10

*Petro. Info. Corp. v. Dep't of the Interior*,
   976 F.2d 1429 (D.C. Cir. 1992) ............................................................................. 10

*Prechtel v. FCC*,
   330 F. Supp. 3d 320 (D.D.C. 2018) ........................................................................ 17

*Prison Legal News v. Samuels*,
   787 F.3d 1142 (D.C. Cir. 2015) ............................................................................. 15

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*,
   740 F.3d 195 (D.C. Cir. 2014) ............................................................................. 12

*Reporters Comm. for Freedom of Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021) ............................................................... 10-12, 14, 18, 20

*Reps. Comm. for Freedom of the Press v. Dep't of Justice*,
   Civ. A. No. 19-2847 (TFH), 2021 WL 5179237 (D.D.C. Nov. 8, 2021) ............................... 19

*Reps. Comm. for Freedom of the Press v. FBI*,
   No. CV 15-1392 (RJL), 2020 WL 1324397 (D.D.C. Mar. 20, 2020) .................................... 19

*Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*,
   Civ. A. No. 18-03065-MEH, 2021 WL 825985 (D. Colo. Mar. 4, 2021) ............................... 18

**Cases (cont.)**

*Rojas v. FAA*,
    941 F.3d 392 (9th Cir. 2019) ................................................................ 14

*S. Env't L. Ctr. v. Council on Env't Quality*,
    507 F. Supp. 3d 694 (W.D. Va. 2020) ................................................ 18

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) .......................................................... 8

*Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*,
    516 F. Supp. 3d 1217 (W.D. Wash. 2021) ........................................ 20

*Smith v. Dep't of Treasury*,
    Civ. A. No. 17-1796 (TSC), 2020 WL 376641 (D.D.C. Jan. 23, 2020) ................................ 21

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
    141 S. Ct. 777 (2021) .................................................................. 11, 12

*Wade v. IRS*,
    771 F. Supp. 2d 20 (D.D.C. 2011) ...................................................... 18

*Waterman v. IRS*,
    288 F. Supp. 3d 206 (D.D.C. 2018) .................................................... 21

*Weisberg v. Dep't of Justice*,
    627 F.2d 365 (D.C. Cir. 1980) ............................................................ 5

**Statutes**

5 U.S.C. § 552(a)(3)(A). .................................................................... 5, 6

5 U.S.C. § 552(a)(6)(A) ...................................................................... 6, 7

5 U.S.C. § 552(a)(8)(A). .................................................................. 6, 22

5 U.S.C. § 552(b) ............................................................................ 22

5 U.S.C. § 552(b)(5). .......................................................................... 9

5 U.S.C. § 552(b)(6). .......................................................................... 9

**Rules**

Fed. R. Civ. P. 56(a). ........................................................................ 5

The U.S. Forest Service respectfully files this memorandum of points and authorities in support of its motion for summary judgment. Colorado Wild Public Lands submitted three requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for certain records relating to a proposed land exchange in the Valle Seco area of Colorado. But it did not exhaust administrative remedies as to its first request, submitted in September 2020. As to its two remaining requests, submitted March and May 2021, the Forest Service conducted an adequate search for responsive records and made limited redactions under Exemption 5 based on the deliberative process privilege, and Exemption 6 based on concerns for personal privacy. Finally, it produced all reasonably segregable, non-exempt portions of responsive records. This Court thus should grant the Forest Service summary judgment.

## STATEMENT OF FACTS

On November 14, 2019, the Forest Service announced that it was considering a land exchange proposal in the Valle Seco area of the Forest Service's Pagosa Ranger District in Colorado. Attach. A, U.S. Forest Service's Statement of Undisputed Material Facts ("SUMF") ¶ 1. Under the terms of this proposed land exchange, the Forest Service would acquire two parcels of non-National Forest System land containing approximately 900 acres in exchange for eleven parcels of National Forest System land containing approximately 472 acres. SUMF ¶ 2. About 176 acres of the National Forest System land fell within a designated Colorado Roadless Area, and would need to be modified prior to any land exchange. SUMF ¶ 3. As part of the proposed land exchange, approximately 26 acres within two suitable Wild and Scenic River corridors would be exchanged for a 20-acre parcel within one of the same corridors. SUMF ¶ 4. The proposed land exchange would secure the Forest Service's legal access to National Forest System Road 653 (Valle Seco Road), providing seasonal motorized access to National Forest System lands south of

the parcel. SUMF ¶ 5. It would also enable the Forest Service dispose of a 20-acre parcel that is completely surrounded by private land and has no legal public access. SUMF ¶ 6.

The Forest Service said that the proposed land exchange's purpose was to improve severe winter range, provide a crucial mitigation corridor for elk and mule deer habit connectivity, and secure additional public access for motorized vehicle use. SUMF ¶ 7. It further stated that the Valle Seco area is one of only two areas in the Pagosa Ranger District that provides severe winter range. SUMF ¶ 8. Such areas are valuable because they provide more forage and remote habitat to escape public disturbances. SUMF ¶ 9. The Forest Service sought public comment on the exchange and Colorado Roadless Area boundary modification as it began initial stages of planning. SUMF ¶ 10.

On September 10, 2020, Colorado Wild Public Lands emailed the Forest Service regarding certain records related to the proposed land exchange. SUMF ¶ 11. On September 14, 2020, District Ranger Kevin Khung responded to Colorado Wild by letter, indicating which of the records Colorado Wild had referenced were available on the project website or other websites, which records would not be posted online, and which records were not in the San Juan National Forest's possession. SUMF ¶ 12. He also provided contact information for Elizabeth Fox, the San Juan National Forest FOIA Coordinator, so that Colorado Wild could file a FOIA request. SUMF ¶ 13. No FOIA tracking number was assigned to Colorado Wild's September 10, 2020 email, as the San Juan National Forest determined that the email was not a FOIA request given that it did not request the production of records, was not designated as a FOIA request, and expressly inquired only about the process to submit a separate FOIA request. SUMF ¶ 14.

### A.  September 2020 FOIA Request (2020-FS-R2-06486-F)

On September 15, 2020, Colorado Wild submitted a FOIA request seeking access to certain records relating to the proposed land exchange. SUMF ¶ 15. In a letter dated September 23, 2020,

the Forest Service confirmed the FOIA request's receipt and assigned it a tracking number of 2020-FS-R2-06486-F. SUMF ¶ 16. On October 7, 2020, the San Juan National Forest produced 43 pages in full. SUMF ¶ 17. On October 27, 2020, the Rocky Mountain Region FOIA Service Center produced a total of 250 pages, 123 of which were released in full and 127 of which were withheld in part, and provided instructions for filing a FOIA appeal, including that Colorado Wild would need to file any appeal within 90 days. SUMF ¶ 18. On January 26, 2021, the period to file an appeal of Request 2020-FS-R2-06486 ended without Colorado Wild filing an appeal. SUMF ¶ 19.

### B.  March 2021 FOIA Request (2021-FS-R2-02802-F)

On March 5, 2021, Colorado Wild emailed a Forest employee inquiring about a Technical Appraisal Review Report that the Forest Service prepared while considering the proposed land exchange. SUMF ¶ 20. On April 2, 2021, the Forest Service sent Colorado Wild a letter informing it that it construed Colorado Wild's March 5, 2021 email as a new FOIA request and assigned it a tracking number of 2021-FS-R2-02802-F. SUMF ¶ 21. On April 2, 2021, it produced the Technical Appraisal Review Reports to Colorado Wild, with certain redactions. SUMF ¶ 22. On May 14, 2021, Colorado Wild filed an appeal as to Request 2021-FS-R2-02802-F, challenging the Forest Service's redactions. SUMF ¶ 23. The agency's Washington Office FOIA Service Center assigned this appeal a tracking number of 2021-FS-WO-00100-A. SUMF ¶ 24.

### C.  May 2021 FOIA Request (2021-FS-R2-03896)

On May 14, 2021, Colorado Wild also submitted a FOIA request that specifically sought release of Appraisals prepared during the Forest Service's review of the proposed land exchange, which are distinct from the Technical Appraisal Review Reports. SUMF ¶ 25. In a letter dated June 23, 2021, the Forest Service sent Colorado Wild a letter confirming its receipt of the May 14, 2021 FOIA request and assigning it a tracking number of 2021-FS-R2-03896. SUMF ¶ 26. The

3

Forest Service stated that it had located 1,028 pages of responsive records that it would withhold in full under FOIA Exemptions 5 and/or 6. SUMF ¶ 27. On June 24, 2021, Colorado Wild filed an administrative appeal as to Request 2021-FS-R2-03896-F. SUMF ¶ 28. The Forest Service assigned this appeal a tracking number of 2021-FS-WO-00112-A. SUMF ¶ 29.

On February 8, 2022, the Forest Service produced 1,086 pages of records to Colorado Wild in response to FOIA Appeals 2021-FS-WO-00100-A and 2021-FS-WO-00112-A. SUMF ¶ 30. Of these, 1,036 pages were produced in full and 50 pages were withheld in part under Exemptions 5 and 6. SUMF ¶ 31. Information redacted under Exemption 5 consisted of portions of drafts of two Appraisals the Forest Service prepared during its deliberation over the proposed land exchange. Attach. B, Declaration of Margaret Scofield ("Scofield Decl.") ¶ 10. The Forest Service prepared one Appraisal evaluating land owned by the Forest Service, and another Appraisal evaluating a combined set of 9 parcels of land owned by private citizens. *Id.* The Appraisals provided estimated fair market values for each land grouping. *Id.* The first item of information withheld under Exemption 5 consists of analysis of the proposed land exchange based on certain legal and factual assumptions later determined to be inapplicable to the parcels at issue. *Id.* The draft Appraisals contained analysis that assumed that certain administrative requirements under Colorado law would not apply to the conveyance of certain parcels. *Id.* The Forest Service later determined that these requirements did apply to the parcels. *Id.* The draft Appraisals also calculated usable acreage of some parcels to the Forest Service specifically, which differed from what usable acreage would be to another purchaser given the Forest Service's ownership of abutting parcels. *Id.*

The second item of information withheld under Exemption 5 consists of names of certain private citizens not involved in the exchange, which were initially included in the draft due to a miscommunication. *Id.* The third item of information withheld under Exemption 5 consists of an

inaccurate figure for the acreage of the combined Non-Federal Parcels A. *Id.* These portions of the Appraisals were prepared to be relied upon by Forest Service personnel during their evaluation of, and ongoing deliberations regarding, the proposed land exchange. Scofield Decl. ¶ 11. They were all removed before the Appraisals were approved in their final forms, and have not been shared with anyone outside the Forest Service other than the contracted Appraiser. *Id.* Finally, information redacted under Exemption 6 consists of (1) a work cell phone number of a Forest Service employee and (2) cell phone numbers and an email address belonging to private citizens who were involved in recent sales of comparable land parcels, are not involved with the proposed land exchange, and neither knew of nor consented to their inclusion in the Appraisals. Scofield Decl. ¶¶ 12-14.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016), *aff'd*, 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) (quotation marks omitted). An agency is entitled to summary judgment in a FOIA case if it shows that no material facts are disputed, it has conducted an adequate search for responsive records, and each responsive record it has found has been produced or is exempt from disclosure. *Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). An agency may rely on reasonably detailed, non-conclusory declarations to meet this burden. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

## ARGUMENT

FOIA generally requires that government agencies, "upon any [proper] request for records . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).  Agencies may withhold records, however, that fall within one of FOIA's nine enumerated exemptions to the

disclosure requirement, so long as the agency "reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law." *Id.* § 552(a)(8)(A)(i).[1] Colorado Wild challenges the adequacy of the Forest Service's search for records responsive to its FOIA requests and the propriety of the agency's withholdings. But Colorado Wild did not exhaust administrative remedies as to the September 2020 request. As to the March and May 2021 requests, the Forest Service conducted an adequate search for responsive records, and produced most of the records it found to Colorado Wild. It properly redacted limited portions of those records under Exemptions 5 and/or 6, producing all reasonably segregable, non-exempt portions of them. This Court thus should grant the Forest Service summary judgment.[2]

## I.   Colorado Wild Did Not Exhaust Its Administrative Remedies As To The September 2020 Request

A FOIA requester may file an administrative appeal within 90 days of any adverse determination. 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa), (a)(6)(A)(ii). "As a general matter, a FOIA requester must exhaust administrative appeal remedies before seeking judicial redress." *Machado Amadis v. Dep't of State*, 971 F.3d 364, 372 (D.C. Cir. 2020). That is "so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). A requester will be "deemed to have exhausted his administrative remedies with respect to [their] request," however,

---

[1]   The request must "reasonably describe[e]" the records sought and be "made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). Colorado Wild's compliance with these requirements is not at issue in this case.

[2]   Colorado Wild does not seem to say that its September 10, 2020 email was a FOIA request requiring a search for responsive records. To the extent it does so contend, however, summary judgment is warranted as to that email, as it was not a FOIA request, and alternatively did not reasonably describe the records that it sought—it did not request production of records, was not designated a FOIA request, and inquired about the process for submitting a separate FOIA request. Scofield Decl. ¶ 4; 5 U.S.C. § 552(a)(3)(A) (request must "reasonably describe[e]" records sought).

if the agency does not respond to the request within 20 days, excluding weekends and holidays. 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(C)(i).

Colorado Wild filed Request 2020-FS-R2-06486-F on September 15, 2020, and the Forest produced responsive records on October 7, 2020. Scofield Decl. ¶ 5. On October 27, 2021, the Forest Service issued a final response, and gave instructions for filing an administrative appeal. *Id.* Colorado Wild did not file an administrative appeal within the 90-day deadline, which passed on January 26, 2021. *Id.* Colorado Wild asserts that its May 14, 2021 appeal as to the March 2021 Request also covered the September 2020 Request. Compl. ¶ 58. Assuming that is so,[3] that appeal was untimely as to the September 2020 Request. 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa), (a)(6)(A)(ii). As such, the Court should grant the Forest Service summary judgment as to the September 2020 Request for failure to exhaust administrative remedies. *Hidalgo*, 344 F.3d at 1258.

## II. The Forest Service Conducted An Adequate Search For Records Responsive To The March And May 2021 Requests

An agency must conduct an adequate search in response to a proper FOIA request. *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009). It "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). A reasonable search is one that covers those locations where responsive records are likely to be located. *Id.* A search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Id.* "A search

---

[3]    The May 14, 2021 appeal did not in fact cover the September 2020 Request. It referenced the March 2021 Request only in its caption, and never referenced the September 2020 request by number, mentioning it only in passing in the portion of the request providing factual background for the March 2021 Request. *See* Compl., Attach. B, FOIA Appeal 2021-FS-R2-02802-F (May 14, 2021), ECF No. 1-2; *cf. Citizens Ass'n of Georgetown v. FAA*, 896 F.3d 425, 434 (D.C. Cir. 2018) (party did not raise claim by merely "assert[ing] [it] in the facts section of its opening brief").

need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *DiBacco v. U.S. Army*, 795 F.3d 178, 194-95 (D.C. Cir. 2015) (cleaned up). In other words, "the adequacy of a search is determined not by the fruits of the search, but by the appropriateness of its methods." *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013) (cleaned up). A search is not inadequate merely because it failed to "uncove[r] every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

The agency bears the burden to demonstrate the adequacy of its search by providing a declaration setting forth the type of search performed and averring that all files likely to contain responsive materials were searched. *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003). Such declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (quotation marks omitted). Once an agency meets its burden to demonstrate the adequacy of its search, its position can be rebutted "only by showing that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). Speculative or hypothetical assertions are insufficient to raise a material question of fact as to the search's adequacy. *Oglesby*, 920 F.2d at 67 n.13.

The same day that the Forest Service received the March 2021 Request, which sought the Technical Appraisal Review Reports, Rebecca Smith, a Lands and Minerals Specialist for the Pagosa Ranger District of the San Juan National Forest, performed a search for them in the files that she normally kept in the course of her work. Scofield Decl. ¶ 6. She found them and forwarded them for review and processing. Scofield Decl. ¶¶ 4, 6. Six days after the Forest Service received the May 2021 Request, which sought the Appraisals themselves, Chris Brown, Regional Appraiser for the Rocky Mountain Regional Office, conducted a search of files in the Rocky Mountain

Regional Pinyon/Box system—the official electronic records repository for all Appraisals in the Region—using the term "SJNF Valle Seco 2019 Land Exchange Appraisal. Scofield Decl. ¶ 8. He located over 1,028 pages of responsive records, which were eventually produced to Colorado Wild nearly in their entirety. Scofield Decl. ¶¶ 8-9. All this makes clear that the Forest Service performed an adequate search for records responsive to the March and May 2021 Requests.

Indeed, while not dispositive, the fact that the March and May 2021 requests sought only the Appraisals and Technical Appraisal Review Reports prepared in connection with the proposed land exchange, and that the Forest Service's search in fact turned up these records, Scofield Decl. ¶¶ 6-9, underscores the reasonableness of the Forest Service's search. Colorado Wild offers no reason to believe otherwise, pointing only to "information and belief" for its claim that "responsive agency records have been withheld due to an unlawfully narrow search." Compl. ¶ 83. As the above make clear, that is not true, and Colorado Wild cannot show otherwise. For these reasons, this Court should grant the Forest Service summary judgment on the adequacy of its search.

## III.     The Forest Service Properly Redacted Records Under Exemptions 5 And/Or 6

Two exemptions to FOIA's disclosure requirement are relevant in this case. Exemption 5 shields "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 6, meanwhile, shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6). Court must give FOIA's exemptions "a fair reading," rather than a narrow one. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019). That is because these exemptions serve "important interests," and "are as much a part of FOIA's purposes and policies as the statute's disclosure requirement" itself. *Id.* (cleaned up). An agency bears the burden to show that a record fits within an exemption's

scope. *See Petro. Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992). The agency "can meet this burden through affidavits or declarations that describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *People for the Ethical Treatment of Animals v. Dep't of Health & Human Servs.*, 901 F.3d 343, 349 (D.C. Cir. 2018) (quotation marks omitted).

The Forest Service properly withheld records under Exemptions 5 and 6. Under Exemption 5, it redacted three items of information erroneously included in drafts of the Appraisals used to evaluate the proposed land exchange, all of which were removed from the final versions of these documents. Under Exemption 6, it withheld the cell phone numbers and an email address of private citizens, and the work cell phone number of a Forest Service employee. The Forest Service determined that the release of this information would harm, respectively, (1) its ability to prepare complete, accurate, and high-quality Appraisals necessary to evaluate proposed land exchanges, as well as the public's understanding of the bases for its decisions, and (2) the privacy of those to whom the contact information belongs. As explained below, these withholdings were proper.

## A. The Forest Service Properly Withheld Records Under Exemption 5 Based On The Deliberative Process Privilege

Exemption 5 shields from disclosure records that are subject to the deliberative process privilege—those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021) (quotation marks omitted). To fall within the deliberative process's scope, a record must be "both predecisional and deliberative." *Id.* at 362. A record "is predecisional if it was generated before the agency's final decision on the matter," and "is deliberative when it is prepared to help the agency formulate its position, and it

10

reflects the give-and-take of the consultative process." *Id.* (cleaned up). "There is considerable overlap between these two prongs because a document cannot be deliberative unless it is predecisional." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021).

The deliberative process privilege serves several important values. It (1) "assures agency staff that they can provide their candid opinions and recommendations to decisionmakers without fear of ridicule or reprisal," (2) "protects policymakers from premature disclosure of their proposals before they have been completed or adopted," and (3) "guards against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Reporters Comm.*, 3 F.4th at 361 (quotation marks omitted). Ultimately, the privilege "reflects the commonsense notion that agencies craft better rules when their employees can spell out in writing the pitfalls as well as strengths of policy options, as well as an understanding that employees would be chilled from such rigorous deliberation if they feared it might become public." *Id.* at 362 (quotation marks omitted). "[E]xperience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances to the detriment of the decisionmaking process." *Machado Amadis*, 971 F.3d at 371 (quotation marks omitted).

Pursuant to the Exemption 5, the Forest Service redacted three pieces of information in the draft Appraisal that Forest Service personnel prepared for use in the agency's evaluation of and ongoing deliberations surrounding the proposed land exchange. Scofield Decl. ¶ 10. First, it redacted analysis of the proposed land exchange based on certain legal and factual assumptions later determined to be inapplicable to the land at issue. *Id.* The draft Appraisals contained analysis that assumed that certain administrative requirements under Colorado law would not apply to the conveyance of certain parcels. *Id.* The Forest Service later determined that these requirements did

11

in fact apply to the parcels at issue. *Id.* The draft Appraisal also calculated usable acreage of certain parcels to the Forest Service specifically, which differs from what usable acreage would be to a different purchaser given the Forest Service's ownership of abutting parcels. *Id.*

Second, the Forest Service withheld the names of certain private citizens not involved in the proposed land exchange, which Forest Service personnel initially had included in the draft due to a miscommunication.[4] *Id.* Third, the Forest Service withheld an inaccurate figure concerning the acreage of the combined Non-Federal Parcels A. *Id.* All this information was removed from the Appraisals prior to their issuance. Scofield Decl. ¶ 11.

This information—portions of draft Appraisals that the Forest Service used to evaluate the proposed land exchange, Scofield Decl. ¶ 10-11—falls squarely within the deliberative process privilege's scope. It was "generated before the [Forest Service's] final decision on the" proposed land exchange, was "prepared to help the [Forest Service] formulate its position," and "reflects the give-and-take of the consultative process," *Reporters Comm.*, 3 F.4th at 362; *compare Sierra Club, Inc.*, 141 S. Ct. at 786 ("The deliberative process privilege protects the draft biological opinions at issue here because they reflect a preliminary view—not a final decision—about the likely effect of the EPA's proposed rule on endangered species."). Nor, under the consultant corollary doctrine, does the fact that the Appraiser initially made the draft Appraisals and worked with Forest Service personnel to finalize them undermine their status as "intra-agency" records. *See Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 201 (D.C. Cir. 2014) ("[T]his Court has also interpreted the phrase 'intra-agency' in Exemption 5 to go beyond the text and include U.S. agency records authored by non-agency entities if those records were solicited by a U.S. agency in the course of its deliberative process."); *Dep't of Interior*

---

[4]     As explained in Part III.B, this information also falls within Exemption 6's scope.

*v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 10 (2001) (citing various cases holding that consultant corollary applies to land appraisals created by outside appraisers).

The Forest Service further determined that releasing this information would harm interests the deliberative process privilege protects. First, it "would undermine the Forest Service's ability to prepare complete, accurate, and high-quality Appraisals, which are necessary to effectuate land exchanges, by chilling the open and candid identification, discussion, and correction of factual and analytical errors in draft Appraisals." Scofield Decl. ¶ 11. *Machado Amadis* is instructive—there, the agency satisfied the foreseeable harm standard where its "affidavit adequately explained that full disclosure of the [records at issue] would discourage line attorneys from candidly discuss[ing] their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals," because "[s]uch chilling of candid advice is exactly what the privilege seeks to prevent." 971 F.3d at 371 (cleaned up). The D.C. Circuit recognized that the agency had not "simply rel[ied] on generalized assertions that disclosure 'could' chill deliberations," because it had (1) "specifically focused on the information at issue" in identifying the precise records that it withheld, and (2) explained "that disclosure of that information 'would' chill future internal discussions," not simply that it "could" chill such deliberations. *Id.* Here too, the Forest Service has pointed to specific categories of information that it withheld under Exemption 5, and explained with particularity how disclosure of that information "would" harm interests that the deliberative process privilege protects. Scofield Decl. ¶ 11.

Second, releasing the redacted information would create a risk of misleading or confusing the public. *Id.* The Forest Service explained that releasing the information "may confuse or mislead the public as to the reasons for the Forest Service's eventual decision regarding the proposed land exchange, by erroneously suggesting that the Forest Service's potential decision-making rested on

these factual and analytical inaccuracies that the Forest Service in fact did not rely on." *Id.*; *see also Reporters Comm.*, 3 F.4th at 361 (deliberative process privilege "guards against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." (quotation marks omitted)); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (same); *Jordan v. Dep't of Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (deliberative process privilege "protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon.").

For all these reasons, the Forest Service properly withheld records under Exemption 5.

**B.  <u>The Forest Service Properly Withheld Records Under Exemption 6</u>**

Exemption 6 "is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (quotation marks omitted). It encompasses "detailed Government records on an individual which can be identified as applying to that individual," *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1124 (D.C. Cir. 2004), and thus covers "not just files, but also bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy," *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (cleaned up). As relevant here, email addresses and telephone numbers can fall within Exemption 6's scope. *See Rojas v. FAA*, 941 F.3d 392, 405 (9th Cir. 2019) ("government records containing personal email addresses" fall within Exemption 6's scope); *Hall & Assocs. v. EPA*, Civ. A. No. 19-1095 (RC), 2020 WL 4673411, at *3 (D.D.C. Aug. 12, 2020) ("[C]ourts in this District have held that Exemption 6 applies to email addresses" (collecting cases)); *Hunton & Williams LLP v. EPA*, 346

14

F. Supp. 3d 61, 86 (D.D.C. 2018) ("[T]he Court grants the EPA summary judgment on the redaction of the email addresses and phone numbers").

"To apply exemption 6, a court must first determine whether disclosure would compromise a substantial, as opposed to a *de minimis,* privacy interest." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (quotation marks omitted). The term "substantial," however, "in this context means less than it might seem"—only that the interest is more than *de minimis*. *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008). If the records implicate a substantial privacy interest, a court balances any individuals rights of privacy against the public interest in disclosure. *Id.* "The only relevant public interest in [this] balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quotation marks omitted).

1. *The Forest Service Properly Withheld Cell Phone Numbers And An Email Address Belonging To Private Citizens*

Phone numbers and email addresses of private citizen are the paradigm of information that Exemption 6 protects. The disclosure of such information can cause private citizens to "become targets of harassment." *Braun v. Postal Serv.*, 317 F. Supp. 3d 540, 550 (D.D.C. 2018) (quotation marks omitted); *see also Pejouhesh v. Postal Serv.*, Civ. A. No. 17-1684 (RDM), 2019 WL 1359292, at *6 (D.D.C. Mar. 26, 2019) ("[T]elephone numbers are precisely the sort of bits of personal information the release of which would create a palpable threat to privacy" (cleaned up)); *Baldwin v. Dep't of Energy*, Civ. A. No. 18-1872 (EGS), 2020 WL 376563, at *5 (D.D.C. Jan. 23, 2020) ("[T]he individuals whose mobile telephone numbers are withheld have a significant personal privacy interest in minimizing unwarranted or unsolicited intrusion and harassment if the numbers were disclosed" (quotation marks omitted)). Thus, as numerous courts in this district have

recognized, private citizens' email addresses and phone numbers implicate a substantial privacy interest. *See, e.g.*, *Hall & Assocs.*, 2020 WL 4673411, at *5 ("Courts in this District have routinely held that release of privately held email addresses would implicate a privacy interest."); *Judicial Watch, Inc. v. Dep't of State*, Civ. A. No. 15-0688 (RC), 2017 WL 456417, at *11 (D.D.C. Feb. 2, 2017) ("The case law is clear that there is a substantial privacy interest in full email addresses."); *Gov't Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) ("[T]he private individuals mentioned in these records have a clear privacy interest in avoiding the disclosure of their personal email addresses.").

The risk of "unwanted intrusions or solicitations" is especially acute where, as here, the persons to whom the contact information belongs share a common trait that can make them attractive targets for commercial solicitation. *See Hall & Assocs.*, 2020 WL 4673411, at *5 ("[O]ne need only assume that business people will not overlook an opportunity to get cheaply from the Government what otherwise comes dearly, a list of qualified prospects . . . . A large email distribution list generated primarily based on self-identified interest in particular topics holds undeniable value." (quotation marks omitted)). Because the private citizens here recently bought property comparable to the property at issue in the proposed land exchange, disclosure of their contact information would create a risk of subjecting them to unwanted contact from realtors, marketers, and other solicitors based on their recent real estate transactions. Scofield Decl. ¶ 15.

On the other side of the ledger, disclosure of private citizens' phone numbers and an email address would not shed any light on what the Forest Service is up to. *Lepelletier*, 164 F.3d at 46; *see also Chelmowski v. United States*, Civ. A. No. 17-1394 (JEB), 2021 WL 3077558, at *5 (D.D.C. July 21, 2021) (Exemption 6 "is particularly [applicable] here because Chelmowski has not indicated why the public has any interest in obtaining disclosure of the number");

*Pejouhesh*, 2019 WL 1359292, at \*6 ("[B]alancing is not difficult where, as here, Plaintiff has not provided any explanation regarding the public interest in disclosure, and no such interest is apparent"); *Braun*, 317 F. Supp. 3d at 550 ("Indeed, the Court does not see how disclosure of this information could shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." (cleaned up)).

Even if these private citizens' identities somehow bore on the Forest Service's decision-making—and Colorado Wild has given no reason to think they do—the agency has not withheld their names, only their cell phone numbers and an email address. Scofield Decl. ¶ 15. Thus, as this Court has recognized, the cell phone numbers and email address only implicate a public interest favoring disclosure if they are "independently valuable in illuminating the agency's actions." *Prechtel v. FCC*, 330 F. Supp. 3d 320, 331 (D.D.C. 2018) (Cooper, J.). It is difficult to fathom what independent significance private citizens' phone numbers and email addresses could have in assessing the Forest Service's decision-making and actions, especially given that the Forest Service did not consider or rely on this information in any way during its evaluation of and deliberations regarding the proposed land exchange. Scofield Decl. ¶ 16.

Because private citizens' phone numbers and email addresses shed no light on the Forest Service's decisions and actions, the private citizens' interest in its continuing confidentiality necessarily outweighs any public interest in its disclosure. *See Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) ("We have been shown no public interest in, and a modest personal privacy interest against, disclosure of the names and addresses of individuals receiving federal employee retirement benefits. We need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time."). And even if the disclosure of this information would serve any public interest, it is a miniscule one given that the private citizens'

names have already been produced, and thus cannot outweigh the private citizens' interest in the confidentiality of their contact information. *See Wade v. IRS*, 771 F. Supp. 2d 20, 25 (D.D.C. 2011) (concluding under Exemption 6 that "[g]overnmental transparency is not effected by such a disclosure, and to whatever degree it might be, the disclosure of the 'primary' phone numbers and addresses of the Enrolled Agents suffices to accommodate that *de minimis* public interest").

Finally, the Forest Service has determined that releasing the private citizens' cell phone numbers and the email address would risk their personal privacy. "The very context and purpose of" a record can "make the foreseeability of harm manifest." *Reporters Comm.*, 3 F.4th at 372. Courts in this district and others recognize that the government's burden to justify the withholding of personal privacy information like cell phone numbers and email addresses is not high under Exemption 6, as such information goes to the core of the exemption's purpose—to prevent clearly unwarranted invasions of personal privacy. *See, e.g.*, *Chelmowski*, 2021 WL 3077558, at *5 (foreseeable harm where "[t]he only redaction still present in Request 8255 is a single, private cellphone number. Given that protecting personal information—like a phone number—is directly related to Exemption 6's goal . . . the use of that exemption to block out the cellphone number is appropriate."); *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, Civ. A. No. 18-03065-MEH, 2021 WL 825985, at *22 (D. Colo. Mar. 4, 2021) (foreseeable harm as to private citizens' "personal telephone numbers" and "personal email addresses" where Forest Service explained that disclosure could cause "unwarranted invasion of the individuals' privacy"); *S. Env't L. Ctr. v. Council on Env't Quality*, 507 F. Supp. 3d 694, 701, 702 n.4 (W.D. Va. 2020) (foreseeable harm as to "personal contact information redacted pursuant to FOIA Exemption 6"); *cf. Ball v. U.S. Marshals Serv.*, Civ. A. No. 19-1230 (JEB), 2021 WL 4860590, at *9 (D.D.C. Oct. 19, 2021) ("When Exemption 7(C) is invoked, for example, the justifications for non-disclosure generally are also

sufficient evidence of foreseeable harm."). As such, disclosure of the private citizens' cell phone numbers and email address would create a risk that they will suffer unwanted invasions of privacy as a result. Scofield Decl. ¶ 15.

For all these reasons, the Forest Service properly withheld private citizens' email addresses and phone numbers under Exemption 6.

> 2. *The Forest Service Properly Withheld A Forest Service Employee's Work Cell Phone Number*

For essentially the same reasons, the Forest Service properly withheld the work cell phone number of a Forest Service employee. That number clearly implicates a personal privacy interest, and its release would shed no light on the Forest Service's activities, while creating a risk of subjecting the employee to annoying, harassing, and/or threatening contact from the public—a risk that is particularly acute given the ongoing and contentious nature of the deliberations over the proposed land exchange. Scofield Decl. ¶ 13; *Reporters Comm. for Freedom of the Press v. Dep't of Justice*, Civ. A. No. 19-2847 (TFH), 2021 WL 5179237, at *10 (D.D.C. Nov. 8, 2021) ("FBI agents have a privacy interest in being free from unnecessary, unofficial questioning and may become targets of harassing inquiries for unauthorized access to information." (quotation marks omitted)); *Chelmowski*, 2021 WL 3077558, at *6 ("Regarding Exemption 6, the only information withheld contained personal information of EPA employees. . . . the use of Exemption 6 for those documents was also both necessary and reasonable to protect their privacy"); *Reporters Comm. for Freedom of the Press v. FBI*, Civ. A. No. 15-1392 (RJL), 2020 WL 1324397, at *9 (D.D.C. Mar. 20, 2020) ("justifications for withholding information about [a] non-FBI" public employee "readily satisfy the 'foreseeable harm' requirement" given "that disclosure of this individual's identity could subject him or her to unauthorized inquiry and harassment and would constitute a

clearly unwarranted invasion of his/her personal privacy");[5] *Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*, 516 F. Supp. 3d 1217, 1241 (W.D. Wash. 2021) ("[T]he Government adequately articulated how disclosure of the names and identifying information of [foreign] officials would be an unwanted invasion of their personal privacy. . . . release of the personal information could expose the owner of the information to harassment. . . . the [work conference] lines are regularly used by [foreign] officials who have an expectation that their use of these lines will remain between the agency staff and its invited users. Accordingly, the court holds that the Government has focused on the identifying information at issue and explained how disclosure of that information may invade the privacy interests protected by Exemption 6." (cleaned up)); *cf. Ball*, 2021 WL 4860590, at *9 (concluding, under Exemption 7(C), that foreseeable harm existed because "releasing the personal identifying information of Government employees might subject them to harassment or public hostility"); *Waterman*, 288 F. Supp. 3d at 211-12 ("The contact information for individual employees sheds little light on an agency's performance of its statutory duties" (quotation marks omitted)).

That this is a federal employee's work phone number does not alter this conclusion. "One who serves his . . . nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of" federal employees' work contact information "could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives." *Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978). Courts in this district thus recognize that "[f]ederal employees

---

[5]     While the D.C. Circuit vacated other aspects of the District Court's ruling in *Reporters Committee for Freedom of the Press*, it did not disturb the District Court's foreseeable harm analysis in the Exemption 6 context. *See Reps. Comm. for Freedom of the Press*, 3 F.4th at 360-61 (D.C. Circuit's analysis limited to deliberative process privilege).

have a privacy interest that includes the 'right to control information related to themselves and to avoid disclosures that could conceivably subject them to annoyance or harassment in either their official or private lives.'" *Smith v. Dep't of Treasury*, Civ. A. No. 17-1796 (TSC), 2020 WL 376641, at *4 (D.D.C. Jan. 23, 2020) (quoting *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116-17 (D.D.C. 2005)); *see also Lesar v. Dep't of Justice*, 636 F.2d 472, 487 & n.88 (D.C. Cir. 1980) (federal "agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives." (collecting cases)); *Day v. Dep't of State*, Civ. A. No. 17-1418 (EGS), 2020 WL 1078955, at *8 (D.D.C. Mar. 6, 2020) (Exemption 6 protected "personally identifiable information including names, personal cell phone numbers, and email addresses of State Department officials, [and] other United States government officials"). *Bell v. Dep't of Defense*, Civ. A. No. 16-0959 (RC), 2018 WL 4637005, at *16 (D.D.C. Sept. 27, 2018) ("Federal civilian employees also have a protectible privacy interest in purely personal details that do not shed light on agency functions."); *Waterman v. IRS*, 288 F. Supp. 3d 206, 211-12 (D.D.C. 2018), *vacated in irrelevant part*, 755 F. App'x 26 (D.C. Cir. 2019) (disclosure of government employees' contact information "exposes individual employees to threatening or harassing contacts from the public").

The employee's privacy interest is especially strong given that the phone number at issue here is a cell phone number, which, unlike landlines, Forest Service employees generally carry on them outside of the office and normal work hours. Scofield Decl. ¶ 13; *see also Smith*, 2020 WL 376641, at *4 ("Cell phone numbers implicate a different privacy interest from landline office phone numbers because employees carry cell phones with them outside the office and regular work hours. . . . Disclosing the numbers for work cell phones, which employees maintain in their homes and on their person, could subject them to the type of harassment exemption 6 was designed to

prevent."). To the extent that the Forest Service employee's contact information implicates a public interest, the Forest Service has already released the employee's office phone number and email address, which are the proper points of contact for members of the public. Scofield Decl. ¶ 13.

For all these reasons, the Forest Service properly withheld its employee's work cell phone number under Exemption 6.

## IV.    The Forest Service Produced All Reasonably Segregable, Non-Exempt Information

An agency must take reasonable steps to segregate and release all non-exempt portions of responsive records. 5 U.S.C. § 552(a)(8)(A)(ii)(I), 552(b). The Forest Service carefully reviewed each page and line of each responsive record to identify reasonably segregable, non-exempt information, and released all such information to Colorado Wild. Scofield Decl. ¶ 18, 20-21. The only information the Forest Service redacted could not be further segregated without disclosing information that Exemptions 5 and/or 6 protect. Scofield Decl. ¶ 19. Colorado Wild cannot show otherwise, and offers nothing beyond a bare allegation to the contrary. Compl. ¶ 88. The relatively small number of redactions that the Forest Service made given the volume of pages they produced only underscores that the Forest Service faithfully observed its obligation to produce all reasonably segregable, non-exempt portions of responsive records. As such, this Court should grant the Forest Service summary judgment as to its production of reasonably segregable, exempt parts of records.

### CONCLUSION

This Court should grant the Forest Service summary judgment in full.

Dated: November 28, 2022                    Respectfully submitted,

                                            MATTHEW M. GRAVES, D.C. Bar #481052
                                            United States Attorney

                                            BRIAN P. HUDAK
                                            Chief, Civil Division

By: /s/ _____
    BRADLEY G. SILVERMAN
    D.C. Bar #1531664
    Assistant United States Attorney
    601 D Street NW
    Washington, DC 20530
    (202) 252-2575

*Attorneys for the United States of America*