UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COLORADO WILD PUBLIC LANDS,

*Plaintiff*,

v.

U.S. FOREST SERVICE,

*Defendant*.

Civil Action No. 21-2802 (CRC)

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT, AND RESPONSE IN OPPOSITION
TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iii

ARGUMENT .............................................................................................................. 1

I.     The Forest Service Properly Withheld Information Under Exemption 5 Based on the
Deliberative Process Privilege ......................................................................... 2

     A.     The Draft Appraisals are Deliberative in Nature ..................................... 3

     B.     The Forest Service Adequately Explained the Draft Appraisals' Role in the
Deliberative Process Regarding the Land Exchange Decision.............................. 3

     C.     Third Parties Never Had Access to the Draft Appraisals ....................... 4

     D.     The Forest Service Has Shown that the Consultant Corollary Doctrine Applies ... 6

     E.     There is No Exception to the Deliberative Process Privilege for Erroneous Data . 7

     F.     Public Interest Does Not Require Disclosing an Otherwise-Privileged Record..... 8

     G.     The Bureau of Land Management's Release of Appraisal Records is Irrelevant... 9

II.     The Forest Service Properly Withheld Information Under Exemption 6 ........................ 10

     A.     The Forest Service Has Not Disclosed the Information at Issue .......................... 10

     B.     The Fact that Not All of the Phone Numbers at Issue Belong to Private Citizens
Bought Comparable Property is Irrelevant ........................................................ 10

     C.     Colorado Wild's Stated Intent to Use the Withheld Phone Numbers to Harass
Private Citizens is a Reason to Withhold This Information, Not to Disclose It ... 11

III.     Disclosure Foreseeably Would Harm Interests that Exemptions 5 and 6 Protect ........... 12

IV.     Colorado Wild's Contention that the Forest Service Has Failed to "Establish FOIA
Compliance" is Meritless ........................................................................................ 15

     A.     The Forest Service Was Not Required to Submit a *Vaughn* Index....................... 16

     B.     The Forest Service's Supplemental Releases of Records Were Appropriate ....... 16

     C.     The Forest Service Accounted for the Release of Records Outside the Agency .. 17

     D.     The Forest Service Properly Released Multiple Drafts of the Records at Issue ... 17

     E.     The Forest Service Produced Records Shared Outside the Agency Once its
FOIA Staff Learned that Such Records Had Been Shared Outside the Agency .. 18

     F.     The Forest Service's Identification of Certain Third Parties as "Intended Users"
of the Appraisals is Irrelevant ............................................................................ 19

V.     Colorado Wild is Not Entitled to Summary Judgment on a Policy-or-Practice Claim .... 19

     A.     Colorado Wild Did Not Raise a Policy-or-Practice Claim in its Complaint ........ 19

     B.     Colorado Wild Fails to State a Policy-or-Practice Claim .................................... 25

     C.     The Forest Service Does Not Maintain an Unlawful FOIA Policy or Practice .... 26

CONCLUSION.................................................................................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................... 25

*Bartholdi Cable Co. v. FCC*,
   114 F.3d 274 (D.C. Cir. 1997)....................................................................... 9

*Bernegger v. Exec. Off. for U.S. Att'ys*,
   334 F. Supp. 3d 74 (D.D.C. 2018)................................................................ 11

*Bethlehem Steel Corp. v. United States*,
   511 F.2d 529 (Fed. Cir. 1975)....................................................................... 18

*Campaign Legal Ctr. v. Dep't of Just.*,
   34 F.4th 14 (D.C. Cir. 2022).......................................................................... 7

*Cause of Action Inst. v. Dep't of Cpm.*,
   Civ. A. No. 19-2698 (DLF), 2022 WL 4130813 (D.D.C. Sept. 12, 2022)............................. 23

*Chavarriaga v. N.J. Dep't of Corrs.*,
   806 F.3d 210 (3d Cir. 2015)........................................................................... 25

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980)......................................................................... 8

*Colo. Wild. Public Lands, Inc. v. Shoop*,
   Civ. A. No. 17-1564, 2021 WL 1138061 (D. Colo. Mar. 25, 2021)......................................... 3

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*,
   31 F. Supp. 3d 237 (D.D.C. 2014)................................................................... 22

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001)......................................................................................... 2

*Dep't of Just. v. Reps. Comm. For Freedom of Press*,
   489 U.S. 749 (1989)..................................................................................... 12

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*,
   384 F. Supp. 2d 100 (D.D.C. 2005)............................................................... 11

*Food Mktg. Inst. v. Argus Leader Media*,
   139 S. Ct. 2356 (2019)................................................................................. 8

**Cases (cont.)**

*Franks v. Salazar*,
  816 F. Supp. 2d 49 (D.D.C. 2011) ............................................................................. 23

*Friedman v. Bache Halsey Stuart Shields*,
  738 F.2d 1336 (D.C. Cir. 1984) ................................................................................... 8

*Gabriel v. Corr. Corp. of Am.*,
  211 F. Supp. 2d 132 (D.D.C. 2002) ........................................................................... 25

*Greene v. Dalton*,
  164 F.3d 671 (D.C. Cir. 1999) ..................................................................................... 7

*Greenhill v. Spellings*,
  482 F.3d 569 (D.C. Cir. 2007) ................................................................................... 22

*Haneke v. Sec'y of Health, Ed. & Welfare*,
  535 F.2d 1291 (D.C. Cir. 1976) ................................................................................. 25

*Henok v. Chase Home Fin., LLC*,
  922 F. Supp. 2d 110 (D.D.C. 2013) ........................................................................... 25

*Holly Sugar Corp. v. Conner*,
  No. 06-5323, 2007 WL 2935624 (D.C. Cir. Oct. 4, 2007) ........................................ 23

*Jackson v. Mabus*,
  56 F. Supp. 3d 1 (D.D.C. 2014) ................................................................................. 23

*Johnson v. D.C. Metro. Police Dep't*,
  Civ. A. No. 97-0094 (PLF), 1999 WL 1105286 (D.D.C. Nov. 30, 1999) .................. 25

*Jordan v. Dep't of Just.*,
  591 F.2d 753 (D.C. Cir. 1978) ..................................................................................... 8

*Jordan v. Dep't of Just.*,
  Civ. A. No. 17-2702 (RC), 2021 WL 4033070 (D.D.C. Sept. 3, 2021) .................... 11

*Jud. Watch, Inc. v. Dep't of Just.*,
  20 F.4th 49 (D.C. Cir. 2021) ......................................................................................... 6

*Jud. Watch, Inc. v. Dep't of Just.*,
  Civ. A. No. 19-2743 (CJN), 2022 WL 2915605 (D.D.C. July 25, 2022) ................... 8

*Jud. Watch, Inc. v. Dep't of State*,
  557 F. Supp. 3d 52 (D.D.C. 2021) ............................................................................. 13

**Cases (cont.)**

*Khine v. Dep't of Homeland Sec.*,
    943 F.3d 959 (D.C. Cir. 2019) ........................................................................ 16, 20

*Kline v. Weichert*,
    Civ. A. No.16-262-RCL, 2020 WL 2615528 (D.D.C. May 23, 2020) ..................... 24

*Lapera v. Fed. Nat'l Mortg. Ass'n*,
    210 F. Supp. 3d 164, 175 (D.D.C. 2016) ............................................................. 22

*Lee v. Nat'l Elec. Contractor Ass'n*,
    322 F. Supp. 3d 43 (D.D.C. 2018) ...................................................................... 22

*Machado Amadis v. Dep't of State*,
    971 F.3d 364 (D.C. Cir. 2020) ........................................................................... 12

*Marino v. DEA*,
    685 F.3d 1076 (D.C. Cir. 2012) ........................................................................... 9

*Meeropol v. Meese*,
    790 F.2d 942 (D.C. Cir. 1986) ........................................................................... 17

*Metroil, Inc. v. Exxonmobil Oil Corp.*,
    672 F.3d 1108 (D.C. Cir. 2012) ......................................................................... 23

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ........................................................................... 17

*Mobley v. CIA*,
    806 F.3d 568 (D.C. Cir. 2015) ............................................................................. 9

*Muttitt v. Dep't of State*,
    926 F. Supp. 2d 284 (D.D.C. 2013) ................................................................ 7, 20

*Nat'l Fed. of Fed. Emp. v. Cheney*,
    883 F.2d 1038 (D.C. Cir. 1989) ......................................................................... 23

*Nat'l Sec. Couns. v. CIA*,
    931 F. Supp. 2d 77 (D.D.C. 2013) ..................................................................... 26

*Oryszak v. Sullivan*,
    576 F.3d 522 (D.C. Cir. 2009) ........................................................................... 23

*Park S. Neighborhood Corp. v. Vesta Mgmt. Corp.*,
    80 F. Supp. 3d 192 (D.D.C. 2015) ..................................................................... 22

**Cases (cont.)**

*Payne Enters., Inc. v. United States*,
   837 F.2d 486 (D.C. Cir. 1988) ............................................................................. 20, 26

*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982) .................................................................................. 17

*Petro. Info. Corp. v. Dep't of Interior*,
   976 F.2d 1429 (D.C. Cir. 1992) .................................................................................. 8

*Porup v. CIA*,
   997 F.3d 1224 (D.C. Cir. 2021) ........................................................................... 26, 28

*Porup v. CIA*,
   Civ. A. No. 17-0072 (CRC), 2020 WL 1244928 (D.D.C. Mar. 16, 2020) .............................. 28

*Pub. Citizen v. Dep't of State*,
   11 F.3d 198 (D.C. Cir. 1993) .................................................................................. 10

*Pub. Citizen v. Dep't of State*,
   276 F.3d 634 (D.C. Cir. 2002) ........................................................................... 16, 17

*Reps. Comm. for Freedom of the Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021) ................................................................................ 7, 15

*Reynolds v. Capitol Police Bd.*,
   357 F. Supp. 2d 2 (D.D.C. 2004) .............................................................................. 22

*Richardson v. Capital One, N.A.*,
   839 F. Supp. 2d 197 (D.D.C. 2012) ........................................................................... 23

*Sarras v. Dep't of Just.*,
   Civ. A. No. 19-0861 (CRC), 2021 WL 9909763 (D.D.C. Aug. 5, 2021) ............................... 12

*Sharp v. Rosa Mexicano, D.C., LLC*,
   496 F. Supp. 2d 93 (D.D.C. 2007) ............................................................................ 23

*Toxco, Inc. v. Chu*,
   801 F. Supp. 2d 1 (D.D.C. 2011) ............................................................................... 1

*United States ex rel. Carver v. Physicians' Pain Specialists of Ala., P.C.*,
   Civ. A. No. 13-0392, 2017 WL 4873710 (S.D. Ala. Oct. 27, 2017) .................................... 25

*Vaughn v. Rosen*,
   523 F.2d 1136 (D.C. Cir. 1975) ................................................................................. 9

**Cases (cont.)**

*Whalen v. Carter*,
    954 F.2d 1087 (5th Cir. 1992) ................................................................... 25

*Woodson v. Smith*,
    Civ. A. No. 20-2668 (TNM), 2021 WL 4169357 (D.D.C. Sept. 14, 2021) ............................ 22

*Wyler v. Korean Air Lines Co.*,
    928 F.2d 1167 (D.C. Cir. 1991) ................................................................ 18

**Statutes**

5 U.S.C. § 552 ................................................................................... 1

5 U.S.C. § 552(a)(8)(A)(i)(I) ..................................................................... 9

5 U.S.C. § 552(b)(4) ............................................................................. 13

43 U.S.C. § 1716(b) .............................................................................. 3

**Regulations**

43 C.F.R. § 2201.5 ............................................................................... 3

**Rules**

Fed. R. Civ. P. 8(a) ............................................................................ 19

Fed. R. Civ. P. 8(e) ............................................................................ 24

Defendant U.S. Forest Service, by and through the undersigned counsel, respectfully files this reply in support of its motion to dismiss and for summary judgment, ECF No. 26, and response in opposition to Plaintiff Colorado Wild Public Lands' cross-motion for summary judgment, ECF No. 30, in this case arising under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## ARGUMENT

In moving to dismiss and for summary judgment, the Forest Service explained that it had conducted an adequate search for records responsive to Colorado Wild's FOIA requests, and withheld records under Exemption 5, based on the deliberative process privilege, and Exemption 6, the release of which foreseeably would harm interests those exemptions protect. In responding to the Forest Service's motion, Colorado Wild does not challenge the adequacy of the Forest Service's search, *see* Pl.'s Resp. at 3, but raises various challenges to the Forest Service's withholdings.[1] As explained further below, none of Colorado Wild's arguments have merit.

Colorado Wild also cross-moves for summary judgment, although not on any of the above issues.[2] Instead, it purports to challenge what it contends is an unlawful Forest Service policy to withhold land exchange appraisals under Exemption 5 based on the deliberative process privilege. But Colorado Wild did not actually raise this claim in its complaint, and so is not entitled to summary judgment on it. To the extent that two fleeting allusions to the issue in the complaint can be construed to raise such a claim, moreover, they are entirely conclusory, and thus fail to state a

---

[1]     Because Colorado Wild does not dispute any of the particular facts in the Forest Service's Statement of Undisputed Material Facts, ECF No. 26-2; *compare* Pl.'s Statement of Facts Alleged to Be Material and Undisputed, ECF No. 29-19 (failing to address any of Forest Service's specific facts), "the Court may assume that [all of the] facts identified by the moving party in its statement of material facts are admitted." LCvR 7(h)(1).

[2]     Because Colorado Wild does not move for summary judgment on any of these issues itself, any arguments that it makes regarding them in its cross-reply would constitute a sur-reply filed without leave of court, which this Court should strike or disregard. *See Toxco, Inc. v. Chu*, 801 F. Supp. 2d 1, 5 (D.D.C. 2011) (striking sur-reply filed without leave of court).

claim upon which relief can be granted. Regardless, the Forest Service has rescinded and replaced the challenged policy. Any challenge to the old policy thus is moot, and the new policy is lawful.

For all these reasons, this Court should grant the Forest Service summary judgment, deny Colorado Wild's cross-motion for summary judgment, and enter judgment for the Forest Service.

## I.     The Forest Service Properly Withheld Information Under Exemption 5 Based on the <u>Deliberative Process Privilege</u>

In moving for summary judgment, the Forest Service explained that it properly redacted three pieces of information in the draft land exchange appraisals under Exemption 5 based on the deliberative process privilege. Def.'s Mem. at 11, ECF No. 26-1. First, the Forest Service redacted analysis of the proposed land exchange based on legal and factual assumptions later determined to be inapplicable to the parcels at issue. *Id.* Second, it withheld names of private citizens not involved in the proposed land exchange that were erroneously included in the drafts. *Id.* Third, it withheld an inaccurate figure concerning the acreage of the combined Non-Federal Parcels A. *Id.*

The Forest Service further explained that all this information was removed from the draft appraisals before they were finalized. Def.'s Mem. at 11. Finally, it explained that the privilege covered the draft appraisals even though a private contractor appraiser played a role creating them, as under the consultant corollary doctrine, the privilege "extends to communications between Government agencies and outside consultants hired by them," so long as "the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 10 (2001).

In response, Colorado Wild challenges the deliberative process privilege's application on seven grounds. Specifically, it argues that (1) the draft appraisals are not deliberative in nature, (2) the Forest Service failed to explain the draft appraisals' roles in the deliberative process, (3) third parties had access to the draft appraisals, (4) the Forest Service failed to show that the

2

consultant corollary doctrine applies, (5) the deliberative process privilege does not apply to erroneous data, (6) the asserted public interest in the records requires their disclosure despite their privileged status, and (7) the release of certain appraisal records by the Bureau of Land Management ("BLM") shows that the records at issue here are not exempt from disclosure. None of these arguments have merit.

### A.     The Draft Appraisals are Deliberative in Nature

First, Colorado Wild argues that the Forest Service failed to show that the draft Appraisals are deliberative in nature. Pl.'s Resp. at 31, ECF No. 29. That is incorrect. In her first declaration, Ms. Scofield explained that the Forest Service relies on the Appraisals to ascertain "an estimated fair market value for the parcel(s) at issue," 1st Scofield Decl. ¶ 10, an essential step to fulfilling its duty to ensure that the values of the parcels to be exchanged are equal, *see* 43 U.S.C. § 1716(b); 43 C.F.R. § 2201.5; *see also Colo. Wild. Public Lands, Inc. v. Shoop*, Civ. A. No. 17-1564, 2021 WL 1138061, at *1 (D. Colo. Mar. 25, 2021) (agency "prepared appraisals of the value of each parcel because federal law requires that the lands exchanged have approximately equal values").

### B.     The Forest Service Adequately Explained the Draft Appraisals' Role in the Deliberative Process Regarding the Land Exchange Decision

Second, Colorado Wild contends that the Forest Service did not adequately explain "the role of each withheld record in the course of the deliberative process, the nature of the decision-making authority of the person or office issuing the record and the position in the chain of command of the parties to the records." Pl.'s Resp. at 24. But through her declarations, Margaret Scofield, the Forest Service's Assistant Director, Freedom of Information Act, explained the draft appraisals' role in the deliberative process relating to the land exchange decision. In her first declaration, Ms. Scofield explained that the draft appraisals "provided an estimated fair market value for the parcel(s) at issue" based on a parcels' unique characteristics, which the Forest Service

3

then used to decide whether to approve the land exchange. 1st Scofield Decl. ¶ 10. And she adequately identified the positions and authority of the persons who prepared the draft appraisals by explaining that the drafts were prepared by the private contractor appraiser and Forest Service personnel who evaluated the proposed land exchange. *Id.* ¶ 11.

In her second declaration, Ms. Scofield elaborated further on the roles of and authority held by the private contractor appraiser and Forest Service official involved in the appraisals' creation. She explained that the appraiser prepared each draft appraisal, which the Forest Service's Regional Appraiser Charles Brown—the Senior Review Appraiser for this land exchange—then reviewed. Ex. A, 2d Scofield Decl. ¶ 9. During his review, Brown would ask the appraiser to make any corrections he determined to be necessary, such as those based on factual errors or misapplications of applicable requirements (e.g., the Uniform Appraisal Standards for Federal Land Acquisitions). *Id.* Once this iterative review process concluded and Brown concluded that a draft appraisal was factually and legally sufficient, he recommended to the Regional Director of Lands that the Forest Service accept the appraisal for agency use. *Id.* The Regional Director of Lands then accepted the appraisal and considered it to ascertain the values of the parcels to be exchanged, before making a recommendation to the San Juan National Forest Supervisor, the ultimate decision-maker on the land exchange, on whether to approve or reject the land exchange. *Id.* Only then are the Appraisals shared with third parties. *Id.* ¶¶ 8-9. The San Juan National Forest Supervisor then considered the appraisal, along with other material and information, in making the decision to approve or reject the land exchange. *Id.* ¶ 9. As such, Ms. Scofield adequately explained how each record withheld under Exemption 5 was part of the deliberative process.

### C.    Third Parties Never Had Access to the Draft Appraisals

Third, Colorado Wild argues that the deliberative process privilege does not apply to the draft appraisals because certain third parties were designated as "intended users" of, and eventually

given access to, the appraisals. Pl.'s Resp. at 27. This argument rests on a misunderstanding of the third parties' role in the appraisals' creation—while third parties had access to the final versions of the appraisals, at no point did they have access to draft appraisals. Before an appraisal is created, the Forest Service and appraiser create a Statement of Work, which specifies in advance, among various other things, who the appraiser's client(s) is/are, who an appraisal's intended user(s) is/are, and who may access an appraisal before it is accepted for agency use. 2d Scofield Decl. ¶ 7. The Statement of Work for the appraisals at issue identified the San Juan National Forest as the appraiser's only client for the land exchange. Ex. B, Statement of Work at 2, 9. While the Statement of Work identifies certain third parties as intended users, it also specifies—in a provision labeled "Confidentiality"— that "[t]he appraiser may provide about the assignment, appraisals results, or portions thereof only the to the Senior Review Appraiser," and that "[a]ppraisals may only be distributed to the intended users after the technical review is completed." *Id.* at 7.

In other words, the Statement of Work limited access to the appraisals to the Forest Service prior to their acceptance for agency use. 2d Scofield Decl. ¶¶ 8-9. Only once the appraisals were accepted for agency use were the third parties given access to the appraisals. *Id.* And even then, the third parties received access only to the final versions of the appraisals—not to the drafts, which were not shared outside the Forest Service. *Id.* The fact that the third parties were designated as "intended users" means only that they had access to the final appraisals, not to the drafts, which are the only materials at issue here. 1st Scofield Decl. ¶ 10.[3] That third parties paid for the

---

[3]     Colorado Wild obfuscates this point throughout its response, incorrectly asserting that the Forest Service withheld portions of the final versions of the appraisals, rather than only portions of the draft appraisals. For example, Colorado Wild argues that the Forest Service "provides no evidence of any expectation of privacy for appraisals shared with a party on the other side of a potential land deal." Pl.'s Resp. at 30. But this has no bearing on the draft appraisals, which were not shared outside the Forest Service, as opposed to the final versions. 2d Scofield Decl. ¶¶ 8-9.

appraisals' creation, meanwhile, is simply a non-sequitur. There is no rule that the deliberative process privilege does not cover an intra-agency record that was not shared with a third party solely because that third party paid for the record's creation. All that matters is the role the record played in the deliberative process. *See Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 55 (D.C. Cir. 2021) ("the deliberative process privilege is dependent upon the individual document and the role it plays in the administrative process" (citation omitted)).

      **D.**      **The Forest Service Has Shown that the Consultant Corollary Doctrine Applies**

Fourth, Colorado Wild argues that the Forest Service has failed to show that the consultant corollary doctrine applies to the draft appraisals because it has offered no evidence as to "whom the appraiser was hired by, was working for, or taking direction from." Pl.'s Resp. at 29. In her second declaration, however, Ms. Scofield explained that the Forest Service hired the appraiser to perform appraisal services in connection with the proposed land exchange. 2d Scofield Decl. ¶ 7. The Statement of Work corroborates this, identifying the Forest Service as the appraiser's client with respect to the proposed land exchange. Statement of Work at 2, 9. Colorado Wild points to a document captioned "Implementation Schedule," ECF No. 29-17, as evidence that the third parties hired the appraiser, Pl.'s Resp. at 30. But this document simply identifies certain action items in the appraisal process, the entity responsible for paying for each action item, and target dates for each action item. ECF No. 29-17. The document also provides that "Non-Federal Party is responsible for all costs associated with the [National Environmental Policy Act], appraisal, title policy. publications. recording costs and [Bureau of Land Management] supplemental plats and other items as noted above." *Id.* at 4. Nothing in this document suggests that the appraiser was hired by or took direction from third parties, rather than the Forest Service.

Ms. Scofield further explained that the appraiser serves as a disinterested neutral in the appraisal process, impartially assessing a parcel's value without regard to any interests of its own

or the interests of any other client. 2d Scofield Decl. ¶ 7. In the face of this evidence, any claim that the appraiser secretly represented another client's interests, or harbored interests of its own, is wholly conjectural, and thus insufficient to defeat summary judgment. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) ("statements made by the party opposing a motion for summary judgment" may be too "conclusory" to accept as true); *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 301 (D.D.C. 2013) ("At summary judgment, although the moving agency retains the burden of proving the applicability of claimed exemptions, it is insufficient for the nonmoving party to state in conclusory fashion, as the plaintiff does here, that [the agency] has not met its burden, and summary judgment should not be awarded until it does." (cleaned up)).

Colorado Wild also notes that the Forest Service did not hire the third parties, and that the third parties have interests of their own. Pl.'s Resp. at 29. That is a puzzling non-sequitur—perhaps Colorado Wild confused the third parties with the appraiser. None of the withheld materials consist of communications between the Forest Service and third parties—only of portions of the draft appraisals, which the third parties never saw. 1st Scofield Decl. ¶ 10; 2d Scofield Decl. ¶¶ 8-9.

### E.      There is No Exception to the Deliberative Process Privilege for Erroneous Data

Fifth, Colorado Wild seems to argue that the deliberative process privilege does not apply to "agency records containing erroneous data." Pl.'s Resp. at 32. But there is no exception to the privilege for erroneous data. Indeed, the idea that erroneous data is categorically unprivileged conflicts with one of the privilege's primary rationales—to "guard[ ] against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021) (internal quotation marks omitted); *see also Campaign Legal Ctr. v. Dep't of Just.*, 34 F.4th 14, 23 (D.C. Cir. 2022) (privilege "protects the public from being misled by documents suggesting reasons and rationales for a course

of action which were not in fact the ultimate reasons for the agency's action" (internal quotation marks omitted)); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (same); *Petro. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1437 n.10 (D.C. Cir. 1992) ("risk of public confusion [is] a subsidiary rationale for the deliberative process privilege"); *Jordan v. Dep't of Just.*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (privilege "protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon"). While there is no "blanket exemption for information marred by errors," *Petro. Info. Corp.*, 976 F.2d at 1437 n.10, a record that otherwise falls within the privilege's scope is not unprivileged solely because it consists of erroneous data.

### F.     Public Interest Does Not Require Disclosing an Otherwise-Privileged Record

Sixth, Colorado Wild argues that the records at issue here concern "a matter of great public interest in general." Pl.'s Resp. at 31. Even if that is so, it is immaterial to whether the deliberative process privilege applies. *See Friedman v. Bache Halsey Stuart Shields*, 738 F.2d 1336, 1344 (D.C. Cir. 1984) ("In the FOIA context . . . the most urgent need will not overcome an applicable FOIA exemption"); *Jud. Watch, Inc. v. Dep't of Just.*, Civ. A. No. 19-2743 (CJN), 2022 WL 2915605, at *7 n.6 (D.D.C. July 25, 2022) ("Public interest in a document is not a basis for a court to order disclosure if FOIA exemptions are otherwise validly invoked"). As the Supreme Court has recently explained, FOIA's exemptions serve "important interests," and these "exemptions are as much a part of [FOIA's] purposes and policies as [its] disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (cleaned up). More broadly, the Court rejected the notion that FOIA must be construed with a thumb on the scale for disclosure, holding that courts must give FOIA not a broad or narrow reading, but only "a fair reading." *Id.* Any asserted public interest in the records at issue is simply immaterial to whether FOIA requires their disclosure.

**G.      The Bureau of Land Management's Release of Appraisal Records is Irrelevant**

Seventh, Colorado Wild argues that BLM's alleged voluntarily release of certain appraisal records demonstrates that the deliberative process privilege does not cover the draft appraisals at issue here. Pl.'s Resp. at 32. But BLM's alleged choice to release appraisal records is immaterial to whether the draft appraisals at issue here are privileged. BLM may have made a voluntary choice to release certain appraisal records even though they were privileged. After all, "the mere fact that information falls within a FOIA exemption does not of itself bar an agency from disclosing the information." *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 281 (D.C. Cir. 1997); *accord Vaughn v. Rosen*, 523 F.2d 1136, 1151 (D.C. Cir. 1975) ("the fact that information need not be disclosed under the FOIA does not prohibit its disclosure"). Perhaps BLM concluded that disclosure of such records would not, under the circumstances present, foreseeably harm interests that the privilege protects. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I). Regardless, BLM's choice to release privileged records does not oblige the Forest Service to do the same. *See Mobley v. CIA*, 806 F.3d 568, 584 (D.C. Cir. 2015) ("Disclosure by one federal agency does not waive another agency's right to assert a FOIA exemption."); *Marino v. DEA*, 685 F.3d 1076, 1082 (D.C. Cir. 2012) ("an agency does not waive its right to invoke an otherwise valid FOIA exemption when someone other than the agency from which the information is being sought discloses it" (internal quotation marks omitted)). Even if the BLM records were unprivileged, that would not mean the draft appraisals at issue likewise are unprivileged. Colorado Wild offers no basis to infer that the BLM records and records at issue here, involving different land exchanges, authors, and agencies, are alike in all material respects.

*      *      *

For all of these reasons, the Forest Service has met its burden to show that the deliberative process privilege applies to the records withheld under Exemption 5.

## II.   The Forest Service Properly Withheld Information Under Exemption 6

In moving for summary judgment, the Forest Service explained that it had withheld, under Exemption 6, cell phone numbers and email addresses belonging to private citizens and a Forest Service employee. Def.'s Mem. at 14-22. In response, Colorado Wild offers three arguments as to why it believes these withholdings were improper—that (1) the Forest Service has already released this information, (2) not all the phone numbers at issue belong to private citizens who bought comparable property, and (3) Colorado Wild would like to use the phone numbers and email addresses to harass the private citizens to whom they belong. None of these arguments have merit.

### A.   The Forest Service Has Not Disclosed the Information at Issue

First, Colorado Wild argues that "disclosure of such information to third parties waives any application of the exemption." Pl.'s Resp. at 32-33. But it cites no evidence for its claim that the Forest Service has previously released any of the information withheld under Exemption 6 to third parties. *See Pub. Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993) ("a plaintiff asserting that information has been previously disclosed bears the initial burden of pointing to specific information in the public domain that duplicates that being withheld"). To the extent that this claim rests on Colorado Wild's mistaken assertion that the Forest Service has shared the draft appraisals with third parties, the Forest Service has already explained why this is incorrect.

### B.   The Fact that Not All of the Phone Numbers at Issue Belong to Private Citizens Bought Comparable Property is Irrelevant

Second, Colorado Wild takes issue with what it characterizes as the Forest Service's claim that records withheld under Exemption 6 "consists of the phone numbers of private citizens who recently bought property comparable to the property at issues in the proposed land exchange." Pl.'s Resp. at 33 (cleaned up). The Forest Service never intended to claim that all of the phone numbers withheld under Exemption 6 belong to private citizens who recently bought comparable parcels—

only that some of them do—and disclaim any such contention. Colorado Wild, for its part, does not dispute that some of the phone numbers at issue belong to private citizens who recently bought comparable parcels. And as the Forest Service has explained, the phone numbers withheld under Exemption 6 would be exempt regardless of whether they belong to persons who recently bought comparable parcels given the powerful privacy interest that private citizens have in their phone numbers, and the de minimis, if any, public interest in such information. Def.'s Mem. at 15-22.

**C.    Colorado Wild's Stated Intent to Use the Withheld Phone Numbers to Harass Private Citizens is a Reason to Withhold This Information, Not to Disclose It**

Third, Colorado Wild says that "[p]roviding contact information for sales agents and ranch managers would enable Plaintiff and the public to communicate directly with those individuals most knowledgeable about the parcels used to value the Valle Seco Land Exchange parcels." Pl.'s Resp. at 33. Colorado Wild's candid confession of intent to use the withheld materials to harass private citizens only underscores why those withholdings were so warranted in the first place. *See Jordan v. Dep't of Just.*, Civ. A. No. 17-2702 (RC), 2021 WL 4033070, at *9 (D.D.C. Sept. 3, 2021) ("the agency does not need to disclose an individual's contact information if doing so would . . . make [one] a target for harassment"); *Bernegger v. Exec. Off. for U.S. Att'ys*, 334 F. Supp. 3d 74, 89 (D.D.C. 2018) (Exemption 6 applied where there was "reason to believe that plaintiff will harass or retaliate against those individuals identified" (cleaned up)); *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 117 (D.D.C. 2005) (Exemption 6 applied where disclosure would make persons "likely to experience annoyance or harassment"). Any *de minimis* insight into "what their government is up to" Colorado Wild might glean from the phone numbers pales in comparison to the privacy interests of the private citizens whom it intends to harass, as FOIA's purpose "is not fostered by disclosure of information about private citizens that is accumulated in

various governmental files but that reveals little or nothing about an agency's own conduct." *Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989) (cleaned up).

*     *     *

For these reasons, the Forest Service has met its burden to show that Exemption 6 applies to the withheld phone numbers and email addresses.

## III.     Disclosure Foreseeably Would Harm Interests that Exemptions 5 and 6 Protect

In moving for summary judgment, the Forest Service explained how releasing the withheld materials foreseeably would harm interests that Exemptions 5 and 6 protect. Def.'s Mem. at 13-14, 18-21. In its response, Colorado Wild does not dispute that the Forest Service has demonstrated foreseeable harm as to the records withheld under Exemption 6. Pl.'s Resp. at 34-36. As to the portions of the draft appraisals withheld under Exemption 5, the Forest Service has demonstrated that their release foreseeably would interests that the deliberative process privilege protects.

In her first declaration, Ms. Scofield explained that releasing the redacted portions of the draft appraisals "would undermine the Forest Service's ability to prepare complete, accurate, and high-quality Appraisals, which are necessary to effectuate land exchanges, by chilling the open and candid identification, discussion, and correction of factual and analytical errors in draft Appraisals." 1st Scofield Decl. ¶ 11. This explanation suffices because it "specifically focused on the information at issue," and explained "that disclosure of that information 'would' chill future internal discussions," not merely that it "could" chill such deliberations. *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020); *see also id.* (agency showed foreseeable harm where it explained that disclosure "would discourage line attorneys from candidly discussing their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals" (cleaned up)); *Sarras v. Dep't of Just.*, Civ. A. No. 19-0861 (CRC), 2021 WL 9909763, at *8 (D.D.C. Aug. 5, 2021) (attestation that

12

"disclosure of recommendations offered in an effort to support a final treaty transfer determination would make officials contributing to pre-decisional deliberations much more wary in providing their views' . . . explains how protecting the specific type of material withheld (treaty transfer recommendations) would serve a previously identified purpose of Exemption 5 (encouraging candor) within the context of the deliberations at issue (treaty transfer determinations)"); *Jud. Watch, Inc. v. Dep't of State*, 557 F. Supp. 3d 52, 60 (D.D.C. 2021) (explanation that disclosure would lead officials to "'believe that every edit or comment they propose in a draft document may be released to the public, thus curbing the candid exchange of ideas between Department officials and curtailing creativity in the compilation and explanation of Department policy' . . . links the agency's prediction of harm to the specific category of deliberative material at issue").

In her second declaration, moreover, Ms. Scofield elaborated on how releasing the redacted portions of the draft appraisals would harm the deliberative process concerning proposed land exchanges. 2d Scofield Decl. ¶¶ 11-15; *cf. Jud. Watch*, 557 F. Supp. 3d at 60 ("the agency later provided a second, more detailed Vaughn index"). As Ms. Scofield explained, releasing the redacted portions of the draft appraisals would make appraisers, whose parcel valuations are necessary to the Forest Service's ability to evaluate properly proposed land exchanges, less willing to furnish their services to the Forest Service. 2d Scofield Decl. ¶ 11. The Forest Service sometimes struggles to procure the services qualified appraisers, who fear that working with the Forest Service unduly risks exposing their work product and proprietary information to their competitors. *Id.*

Three factors contribute to this concern. First, unlike clients in the private sector, the Forest Service is subject to FOIA's disclosure requirements. 2d Scofield Decl. ¶ 12 While Exemption 4 offers some protection for confidential commercial information, 5 U.S.C. § 552(b)(4), an appraiser cannot be certain in advance how broadly or narrowly courts will apply Exemption 4 to the material

13

it wishes to remain confidential, and some such material may not fall within Exemption 4's scope even under a broad construction. *Id.* Appraisers thus fear that working with the Forest Service may cause their work product and proprietary information to fall into competitors' hands. *Id.*

Second, the Forest Service owns less land, for which appraisal services may be needed, than other agencies such as BLM. 2d Scofield Decl. ¶ 13. The Forest Service owns about 193 million acres of land, while BLM owns about 245 million acres of land. *Id.* Some appraisers who fear that working with a federal agency may result in the disclosure of their work product and proprietary information nonetheless are willing to work with BLM, for example, given the volume of potential work that they would lose by categorically refusing to work with BLM. *Id.* Refusing to work with the Forest Service, in contrast, cuts appraisers off from less potential work, given the Forest Service's smaller land holdings. *Id.* Accordingly, some appraisers conclude that the volume of potential work they can earn by working with the Forest Service is not worth the accompanying risk of disclosing their work product and proprietary information. *Id.* Appraisers who are willing to work with agencies like BLM thus are not always willing to work with the Forest Service. *Id.*

Third, qualified and experienced appraisers are in high demand by private-sector entities and other federal and/or state agencies. 2d Scofield Decl. ¶ 14. Appraisers thus often can afford to refuse to work with the Forest Service, given the large number of other potential clients seeking their services. *Id.* This means that if an appraiser is concerned that working with the Forest Service may result in disclosure of its work product and proprietary information, the appraiser can often simply refuse to work with the Forest Service—the availability of numerous other potential clients reduces or eliminates entirely any commercial imperative to work with the Forest Service. *Id.*

Releasing the redacted portions of the draft appraisals would further discourage qualified appraisers from working with the Forest Service, by disclosing work product that an appraiser may

wish to remain confidential. 2d Scofield Decl. ¶ 15. The withheld materials consist of factual and legal errors that the Forest Service and appraiser identified and corrected before the Forest Service accepted the appraisals for agency use. *Id.* Disclosing such materials likely would embarrass the appraiser, making it and/or other appraisers less willing to work with the Forest Service on future land exchange proposals. *Id.* This, in turn, would make it harder for the Forest Service to accurately ascertain parcel values, a requirement for evaluating a proposed land exchange. *Id.* Given that the Forest Service already struggles to attract qualified appraisers, disclosing the withheld materials would further inhibit the deliberative process surrounding evaluation of proposed land exchanges.

Finally, Ms. Scofield explained that because the withheld material consists of factual and legal errors, its disclosure would create a risk of "confus[ing] or mislead[ing] the public as to the reasons for the Forest Service's eventual decision regarding the proposed land exchange, by erroneously suggesting that the Forest Service's potential decision-making rested on these factual and analytical inaccuracies that the Forest Service in fact did not rely on." 1st Scofield Decl. ¶ 11. That rationale goes squarely to one of the deliberative process privilege's purposes—"guard[ing] against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Reporters Comm.*, 3 F.4th at 361 (cleaned up); *see also supra* § I.E.

For these reasons, the Forest Service has demonstrated that releasing the withheld materials foreseeable would harm interests that Exemptions 5 and 6 protect.

## IV.   Colorado Wild's Contention that the Forest Service Has Failed to "Establish FOIA Compliance" is Meritless

Next, Colorado Wild contends that the Forest Service has failed "to make a *prima facie* showing, based on admissible evidence, that establishes FOIA compliance." Pl.'s Resp. at 22. It is hard to understand what these words even mean. As the Forest Service has explained, it conducted

an adequate search for responsive records, withheld only those records that fall within a FOIA exemption and the release of which foreseeably would harm an interest that the exemption protects, and has produced all non-exempt, reasonably segregable portions of these records. To the extent that Colorado Wild's contention about "FOIA compliance," *id.*, refers to any of these issues, this contention lacks merit. Nonetheless, out of an abundance of caution, the Forest Service addresses this contention below. Briefly, Colorado Wild challenges the Forest Service's (1) decision not to submit a *Vaughn* Index, (2) supplemental releases of records, (3) alleged failure to account for its release of records outside the agency, (4) release of multiple drafts of the records at issue, (5) explanation that it released records shared outside the agency once its FOIA staff learned that those records had been shared outside the agency, and (6) identification of third parties as intended users of the appraisals. None of these arguments have merit.

### A.    The Forest Service Was Not Required to Submit a *Vaughn* Index

First, Colorado Wild observes that the Forest Service "elected not to submit a *Vaughn* index to support the withholding of records." Pl.'s Resp. at 23. That is irrelevant, because "an agency is not required to produce a *Vaughn* index." *Khine v. Dep't of Homeland Sec.*, 943 F.3d 959, 967 (D.C. Cir. 2019) (internal quotation marks omitted). The Forest Service adequately supported its withholdings through the declarations of Ms. Scofield. As such, the Forest Service's choice not to submit a *Vaughn* Index is immaterial to the propriety of its withholdings.

### B.    The Forest Service's Supplemental Releases of Records Were Appropriate

Second, Colorado Wild notes that the Forest Service made supplemental releases of records that it previously withheld. Pl.'s Resp. at 23, 26-27. But it is well-settled that an agency's release of records that it had previously withheld does not indicate bad faith. *See Pub. Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C. Cir. 2002) ("we have previously declined to find subsequent disclosure as evidence of bad faith" (cleaned up)); *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C.

Cir. 1986) ("we emphatically rejected the notion that an agency's disclosure of documents it had previously withheld renders its affidavits suspect" (cleaned up)); *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) ("the circumstances surrounding this delay indicate neither artifice nor subterfuge but rather, at worse, administrative inefficiency."). If anything, the Forest Service's disclosure of records that it had previously withheld only demonstrates its diligent adherence to its FOIA duties, by continuously reevaluating its withholdings on an ongoing basis. *See Pub. Citizen*, 276 F.3d at 645 ("to effectively penalize an agency for voluntarily [releasing additional records] would work mischief by creating an incentive against disclosure" (cleaned up)); *Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981) (penalizing an agency for supplemental releases of records "would work mischief in the future by creating a disincentive for an agency to reappraise its position, and when appropriate, release documents previously withheld").

C.     **The Forest Service Accounted for the Release of Records Outside the Agency**

Third, Colorado Wild claims that the Forest Service failed account for its release of records outside the agency. Pl.'s Resp. at 23. That is plainly incorrect. As Ms. Scofield explained, the Forest Service released to Colorado Wilds records that it has shared with third parties because the Forest Service's "Washington Office FOIA Service Center came to learn that some of the withheld records previously had been shared with parties outside the Forest Service." 1st Scofield Decl. ¶ 7. To the extent Colorado Wild is referring to its false contention that the Forest Service has released parts of the draft appraisals to third parties, the Forest Service has explained why this is incorrect.

D.     **The Forest Service Properly Released Multiple Drafts of the Records at Issue**

Fourth, Colorado Wild observes that the Forest Service produced three different versions of the appraisal for the non-federal parcel, and five different versions of the appraisal for the federal parcel, each with different portions redacted. Pl.'s Resp. at 24. But that is because each appraisal went through numerous different drafts before being finalized, and the Forest Service released the

various drafts that preceded the final versions of the appraisals. 2d Scofield Decl. ¶ 6. Different portions of the draft appraisals were redacted because as the appraisal drafting process unfolded, pre-decisional and deliberative information within the drafts was added, removed, and/or moved around within the drafts. *Id.* The Forest Service's release of multiple drafts that preceded the final versions of the appraisals speaks only to the diligence with which it fulfilled its FOIA duties.

### E.   The Forest Service Produced Records Shared Outside the Agency Once its FOIA Staff Learned that Such Records Had Been Shared Outside the Agency

Fifth, Colorado Wild alleges that "the appraisal information and land exchange documents were shared with third parties at the earliest stages." Pl.'s Resp. at 25. Ms. Scofield explained that after the Forest Service's first release of records, the "Washington Office FOIA Service Center came to learn that some of the withheld records previously had been shared with parties outside the Forest Service." 1st Scofield ¶ 7. Colorado Wild opines that "[i]t is not credible that . . . Ms. Scofield . . . could testify in good faith that the Forest Service was unaware that such material had been shared and only later 'came to learn' of this fact." Pl.'s Resp. at 25. There is no inconsistency between these statements. Ms. Scofield did not attest that the Forest Service was altogether unaware that records had been shared outside the agency—only that the Washington Office FOIA Service Center, specifically, was unaware of this. Nor is there reason to believe the Washington Office FOIA Service Center knew about other Forest Service components' disclosure of records outside the agency as it was happening. Just as "[o]ne federal agency should not be charged with knowledge of what another is doing simply because both are components of the same federal government," *Wyler v. Korean Air Lines Co.*, 928 F.2d 1167, 1171 (D.C. Cir. 1991) (cleaned up), nor will one component of an agency always know what a different component is doing in real time. *Cf. Bethlehem Steel Corp. v. United States*, 511 F.2d 529, 533 (Fed. Cir. 1975) ("In the case of the Government, we realize that the right hand often does not know what the left hand does.").

### F.      The Forest Service's Identification of Certain Third Parties as "Intended Users" of the Appraisals is Irrelevant

Sixth, and finally, Colorado Wild again emphasizes that certain appraisal-related records identify various third-party individuals and entities as "intended users" of the appraisals. Pl.'s Resp. at 25. As already explained, that is immaterial—the fact that the third parties were intended users of the appraisals does not mean they had access to the draft appraisals. *See supra* § I.C.

### V.      Colorado Wild is Not Entitled to Summary Judgment on a Policy-or-Practice Claim

Colorado Wild does not cross-move for summary judgment on any of the above issues. *See* Pl.'s Cross-Mot. Instead, it purports to seek summary judgment on a challenge to an alleged Forest Service policy or practice of withholding appraisals and related materials under Exemption 5. But Colorado Wild is not entitled to summary judgment on this claim because it did not raise such a claim in its complaint. And even if two fleeting, generic references in Colorado Wild's complaint to an unlawful FOIA policy or practice could be construed to raise a FOIA policy-or-practice claim, such threadbare and conclusory references do not suffice to state a plausible claim to relief. Finally, any policy-or-practice claim that Colorado Wild could have raised is moot, because the Forest Service has rescinded the challenged policy, and its current policy is lawful. For all these reasons, this Court should deny Colorado Wild's cross-motion for summary judgment.

### A.      Colorado Wild Did Not Raise a Policy-or-Practice Claim in its Complaint

Federal Rule of Civil Procedure ("Rule") 8 requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1), (3). Colorado Wild purports to seek summary judgment on a FOIA policy-or-practice claim regarding the Forest Service's disclosure of appraisals and related materials. But Colorado Wild forfeited any such claim by failing to raise it in its complaint.

A FOIA policy-or-practice claim is "a claim that an agency policy or practice will impair the party's lawful access to information in the future." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). A policy-or-practice claim is a discrete kind of FOIA claim, one that is distinct from—not merely a subset of, or theory supporting—a claim regarding "a *specific request* under the FOIA." *Id.*; *see also Khine*, 943 F.3d at 965 ("Policy-or-practice claims are an exception to the ordinary rule that disclosure of the requested information will moot a FOIA claim."). That is clear from the D.C. Circuit's characterization of a policy-or-practice claim as a specific type of FOIA "claim," as well as from the fact that such a claim can remain live even after a claim regarding a specific FOIA request has become moot. *Payne Enters.*, 837 F.2d at 491. Indeed, Colorado Wild itself concedes that a policy-or-practice claim is a distinct kind of claim, acknowledging that such a claim is different from "some FOIA claims." Pl.'s Cross-Mot. at 6.

Colorado Wild did not raise a policy-or-practice claim in its complaint. To the contrary, it raised only a single Count, styled "Violation of FOIA: Unlawfully withholding Agency Records Responsive to FOIA Request." Compl. ¶¶ 78-90; *see also Muttitt*, 926 F. Supp. 2d at 293 ("the plaintiff concedes that he did not state a separate cause of action for any policy or practice"). Nor does the prayer for relief seek any relief that applies to an agency policy or practice writ large. Rather, every paragraph of its prayer for relief pertains to specific FOIA requests, and/or costs and attorney's fees. Compl. at 17-18; *see also Muttitt*, 926 F. Supp. 2d at 294 ("Even assuming that a prayer for relief could sufficiently raise otherwise unpleaded claims, the plaintiff's exegesis of his Prayer for Relief in the instant action is unpersuasive. Nothing in the language of the plaintiff's Prayer for Relief conveys the slightest desire, let alone a clear intent to raise a policy-or-practice claim . . . . On the contrary, the language of the plaintiff's Prayer for Relief focuses on specific

denials . . . . boilerplate language commonly invoked in prayers for relief [ ] does not magically

enlarge the plaintiff's otherwise specific FOIA claims into broad, policy-or-practice claims.").

      Belatedly realizing its error, Colorado Wild gestures toward two brief, fleeting, and generic

references in its complaint to the notion of some sort of unlawful FOIA policy or practice. In

paragraph 19 of the complaint, Colorado Wild pleaded:

> Plaintiff has been denied prompt access, based on agency policies that direct
> personnel to withhold information regarding property values until after the
> [National Environmental Policy Act] process is complete, after administrative
> review is complete, and after final agency action is taken on a land exchange. . . .
> The federal agencies and personnel charged with overseeing land exchanges
> (Bureau of Land Management and U.S. Forest Service) have an unlawful policy of
> only sharing the valuation information with persons advocating for the land
> exchange, and denying access to Plaintiff and similarly situated persons. . . .

Compl. ¶ 19.[4] And in paragraph 86, Colorado Wild pleaded:

> Plaintiff seeks remedy for its statutory right to promptly access all agency records
> provided to non-agency third parties, particularly those provided to Western Land
> Group, Inc. on October 26, 2020. That right was violated by agency policies and
> practices designed to avoid FOIA disclosure of controversial land exchange
> information.

*Id.* ¶ 86.

      These brief, fleeting, and generic allusions to an unlawful policy or practice do not suffice

to raise a policy-or-practice claim. Colorado Wild buries these references deep in its 19-page,

90-paragraph complaint, surrounded by pages of more specific allegations concerning specific

FOIA requests, and does not set out a separate policy-or-practice Count. Such thin allusions to the

---

[4]    In moving for summary judgment, Colorado Wild misidentifies paragraph 19 as
paragraph 6. Pl.'s Cross-Mot. at 7. Colorado Wild also argues that the Forest Service admitted
paragraph 19's allegations by failing to respond to it. Pl.'s Resp. at 7. That is incorrect as the Forest
Service answered paragraph 19 as follows: "Defendant lacks knowledge or information sufficient
to form a belief as to the truth of the allegations in this paragraph. To the extent a response is
required, Defendant denies the allegations made against it in this paragraph." Answer ¶ 19, ECF
No. 10. Perhaps Colorado Wild's confusion on this point stems from its misidentification of
paragraph 19 as paragraph 6.

basis of a possible claim do not suffice to raise an otherwise-absent claim. *See, e.g.*, *Oryszak*, 576 F.3d at 524 n.1 ("that allegation . . .[was] too obscure a hint to have put the court on notice of [the] claim"); *Greenhill v. Spellings*, 482 F.3d 569, 573 (D.C. Cir. 2007) ("nothing in our case law requires a district court to go on a fishing expedition for new claims"); *Lapera v. Fed. Nat'l Mortg. Ass'n*, 210 F. Supp. 3d 164, 175 (D.D.C. 2016) ("[m]ere reference" to basis of possible claim does not suffice); *Park S. Neighborhood Corp. v. Vesta Mgmt. Corp.*, 80 F. Supp. 3d 192, 195 (D.D.C. 2015) ("passing" reference to basis of possible claim insufficient to raise it;) *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 274 (D.D.C. 2014) ("This fleeting, ambiguous reference, in contrast to the specific, repeated allegations elsewhere in the Complaint, is insufficient"). That is especially so given that paragraphs 19 and 86 each mention the agency's supposed practices only in the context of, and to provide background to, specific grievances regarding specific FOIA requests.

Colorado Wild argues that these fleeting references sufficed to "notif[y]" the Forest Service as to the relief that Colorado Wild sought. For the reasons explained, they did not. *See Woodson v. Smith*, Civ. A. No. 20-2668 (TNM), 2021 WL 4169357, at *6 (D.D.C. Sept. 14, 2021) ("passing references are not enough to put [defendant] on notice as to the substance of [plaintiff's] claims"); *Lee v. Nat'l Elec. Contractor Ass'n*, 322 F. Supp. 3d 43, 45 (D.D.C. 2018) ("The ambiguous and rambling allegations comprising the complaint fail to provide adequate notice of a claim."); *Reynolds v. Capitol Police Bd.*, 357 F. Supp. 2 2, 8 (D.D.C. 2004) ("claim could not be pursued," as "passing references" to basis of possible claim "did not put [defendant] on notice" of claim).

Because Colorado Wild did not raise a policy-or-practice claim in its complaint, it is not entitled to summary judgment on such a claim. *See Muttitt*, 926 F. Supp. 2d at 294 ("[P]laintiff's failure to include a policy-or-practice cause of action . . . was a conscious choice that the plaintiff

simply now regrets. Yet, the plaintiff cannot cure the problem by attempting, at the summary

judgment stage, to reverse-engineer causes of action that were never pled."); *see also Metroil, Inc.*

*v. Exxonmobil Oil Corp.*, 672 F.3d 1108, 1117 (D.C. Cir. 2012) ("Metroil did not assert that claim

in its complaint, and we therefore do not consider it."); *Oryszak v. Sullivan*, 576 F.3d 522, 524 n.1

(D.C. Cir. 2009) (plaintiff "did not sufficiently raise that claim in her complaint or otherwise give

the district court notice thereof"); *Nat'l Fed. of Fed. Emp. v. Cheney*, 883 F.2d 1038, 1041 (D.C.

Cir. 1989) ("Because appellants failed to raise this allegation in their complaint before the District

Court, the issue was not before that Court."); *Jackson v. Mabus*, 56 F. Supp. 3d 1, 10 (D.D.C.

2014), *aff'd*, 808 F.3d 933 (D.C. Cir. 2015) ("Plaintiff cannot raise in his Motion for Summary

Judgment a claim not contained in his complaint."); *Richardson v. Capital One, N.A.*, 839 F. Supp.

2d 197, 202 (D.D.C. 2012) ("As Plaintiff is not permitted to advance a claim in his Motion and

Opposition that was not alleged in his Complaint, the Court need not consider the merits of

Plaintiff's argument."); *Franks v. Salazar*, 816 F. Supp. 2d 49, 58 n.5 (D.D.C. 2011) ("plaintiffs

cannot use their summary judgment briefing to press claims not raised in their amended

complaint"); *Holly Sugar Corp. v. Conner*, No. 06-5323, 2007 WL 2935624, at *1 (D.C. Cir. Oct.

4, 2007) (affirming summary judgment denial, as plaintiff "failed to raise the claim in its

complaint"); *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 97 (D.D.C. 2007) ("plaintiff

may not, through summary judgment briefs, raise [ ] new claims").

Colorado Wild's reliance on *Cause of Action Institute v. Department of Commerce*, Civ.

A. No. 19-2698 (DLF), 2022 WL 4130813, at *4 (D.D.C. Sept. 12, 2022), *see* Pl.'s Resp. at 8, is

misplaced.[5] *Cause of Action Institute* concluded only that a particular "policy-or-practice claim is

ripe for judicial review" because the allegations supporting that claim "require[d] no speculation

---

[5]      Colorado Wild erroneously describes this case as a D.C. Circuit decision. Pl.'s Resp. at 8.

about future application, nor [did] it depend on the facts of a particular case." *Id.* To conclude that a policy-or-practice claim is ripe for review is not to say two brief references to an unlawful policy or practice suffice to raise such a claim, and *Cause of Action Institute* held no such thing.

Next, Colorado Wild argues that it asserted the existence of a purportedly unlawful Forest Service FOIA policy or practice during settlement discussions. Pl.'s Mot. at 8. But even setting aside that "conduct or a statement made during compromise negotiations about [a] claim" are inadmissible "to prove . . . the validity . . . of a disputed claim," Fed. R. Evid. 408(a), any assertions about a purportedly unlawful FOIA policy or practice that Colorado Wild made after it filed its complaint say nothing about whether it actually raised a policy-or-practice claim in the complaint. If anything, the fact that Colorado Wild plainly knew how to articulate grievances about the policy at issue only throws into sharper relief the absence of any policy-or-practice claim in the complaint.

Finally, Colorado Wild attempts to rely on Rule 8(e)'s admonition that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); Pl.'s Cross-Mot. at 7. But Colorado Wild cites no authority, and the Forest Service knows none, for the notion that a plaintiff can rely on Rule 8(e) to excuse its wholesale failure to plead a claim in its complaint. To the contrary, enabling plaintiffs to evade Rule 8(a)'s pleading requirements and raise claims at the summary judgment stage that they did not plead, depriving defendants of notice of the claims they must defend, would work injustice. *See, e.g.*, *Kline v. Weichert*, Civ. A. No.16-262-RCL, 2020 WL 2615528, at *5 (D.D.C. May 23, 2020), *aff'd sub nom. Kline v. Ahuja*, No. 20-5220, 2021 WL 5537701 (D.C. Cir. Nov. 23, 2021) (rejecting plaintiff's attempt to invoke Rule 8(e) and explaining that "[b]ecause this case has already progressed to the summary judgment stage and discovery is already closed, it would be extremely unjust for this Court to infer the existence of a [ ] claim that was never alleged—[plaintiff] could have alleged this claim in her initial Complaint . . . but she did not"); *cf.*

*United States ex rel. Carver v. Physicians' Pain Specialists of Ala., P.C.*, Civ. A. No. 13-0392, 2017 WL 4873710, at *6 (S.D. Ala. Oct. 27, 2017) ("Rule 8, however, cannot excuse a failure to plead fraud with the particularity required" by Federal Rule of Civil Procedure 9(b)).

### B.   Colorado Wild Fails to State a Policy-or-Practice Claim

Even if the two brief, fleeting, and generic allusions to an unlawful policy or practice in Colorado Wild's complaint Court could be construed to raise a FOIA policy-or-practice claim, such threadbare and conclusory allegations fail to state a plausible claim to relief. *See Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 116 (D.D.C. 2013) (plaintiff "is not entitled to summary judgment on an allegation that does not state a claim for relief"); *see also Haneke v. Sec'y of Health, Ed. & Welfare*, 535 F.2d 1291, 1294 (D.C. Cir. 1976) ("The District Court granted summary judgment for defendants, stating that 'the complaint fails to state a claim upon which relief can be granted'"); *Gabriel v. Corr. Corp. of Am.*, 211 F. Supp. 2d 132, 140 (D.D.C. 2002) ("Failure to state a claim or to allege a prima facie case can serve as bases for granting a summary judgment motion."); *Johnson v. D.C. Metro. Police Dep't*, Civ. A. No. 97-0094 (PLF), 1999 WL 1105286, at *1 (D.D.C. Nov. 30, 1999) (granting summary judgment for failure to state claim); *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 223 (3d Cir. 2015) ("In a summary judgment context, the failure to state a claim is the functional equivalent of the failure to raise a genuine issue of material fact" (citing *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992))).

To state a claim upon which relief can be granted, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Id.* (internal quotation marks omitted). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Colorado Wild's two brief, fleeting, and generic allusions to an alleged unlawful policy or practice are entirely threadbare and conclusory. Colorado Wild does not plausibly allege, as it must, that that the Forest Service is "following an impermissible practice," that such practice "will impair [its] lawful access to information in the future," or that it "it will suffer continuing injury due to this practice." *Payne Enters.*, 837 F.2d at 491 (internal quotation marks omitted). At most, Colorado Wild alludes to past injury, Compl. ¶ 19, which does not suffice to plead a policy-or-practice claim. *See Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 91 (D.D.C. 2013) ("When a plaintiff seeks injunctive or declaratory relief specifically for the purpose of challenging an alleged policy or practice of a government agency, it must also demonstrate that it is realistically threatened by a repetition of its experience." (cleaned up)). Colorado Wild's allegations, such as they are, regarding an ostensibly unlawful policy or practice consist of nothing but "naked assertions devoid of further factual enhancement"—exactly what "will not do" to state a sufficient claim to relief. *Id.* (cleaned up). As such, even had Colorado Wild raised a policy-or-practice claim, it fails to state such a claim in a manner upon which relief can be granted, meriting denial of summary judgment.

### C.   The Forest Service Does Not Maintain an Unlawful FOIA Policy or Practice

Even had Colorado Wild raised a policy-or-practice claim, any such claim is moot, as the Forest Service has ended the challenged policy, and its current policy is lawful. A case is "moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Porup v. CIA*, 997 F.3d 1224, 1231 (D.C. Cir. 2021) (cleaned up). If an agency ceases its challenged conduct voluntarily, a case is moot if the agency show that "(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely or irrevocably eradicated the effects of the alleged violation." *Id.* (internal quotation marks omitted). A policy-or-practice claim thus is moot where an agency "demonstrate[s] that there is no reasonable expectation that the alleged violation will recur." *Id.* at 1232. An agency satisfies this

burden by showing that its "contested practice has been effectively vitiated," which it can do via a declaration by an official with "competence [and] authority within this sphere to effectively bind the [a]gency through her averments" that describes its new policy with "words of requirement" *Id.*

Through Ms. Scofield's second declaration, the Forest Service has shown that the policy that Colorado Wild purports to challenge has been effectively vitiated. Ms. Scofield explained that nearly a year ago, on March 12, 2022, she instructed the Forest Service's FOIA coordinators "that effective immediately, the Forest Service will no longer withhold appraisals approved for agency use, or portions thereof, and related materials under Exemption 5 based on the deliberative process privilege." 2d Scofield Decl. ¶ 4. She further instructed that even before an appraisal is accepted for agency use, "the Forest Service cannot withhold under Exemption 5 based on the deliberative process privilege, any materials that have been shared with individuals or entities outside the Forest Service (other than the appraiser)." *Id.* Finally, she explained that the Forest Service is currently revising its internal FOIA guidance materials to "remove all language directing FOIA processors to withhold appraisals and related materials under Exemption 5 based on the deliberative process privilege," and "reflect the instructions that [she] gave the FOIA processors." *Id.*

In sum, the Forest Service's current policy is to release appraisals that have been accepted for agency use and related materials, withholding only draft appraisals that have not yet been accepted for agency use—and then, only if the Forest Service has not shared them with third parties beyond the appraiser. As the Forest Service has explained, this policy is lawful. Draft appraisals fall within the deliberative process privilege's scope, the appraiser's involvement in their creation does not defeat the privilege under the consultant corollary doctrine, and releasing them before their acceptance for agency use foreseeable would harm interests that the privilege protects. *See* Def.'s Mem. at 9-22; *supra* §§ I, III. "The new policy is materially different than the challenged

practice" of categorically withholding appraisals under Exemption 5 based on the deliberative process privilege—the Forest Service "has not simply renewed the challenged conduct in a new form." *Porup v. CIA*, Civ. A. No. 17-0072 (CRC), 2020 WL 1244928, at *3 (D.D.C. Mar. 16, 2020), *aff'd*, 997 F.3d 1224 (D.C. Cir. 2021).

Ms. Scofield's second declaration thus suffices to show that the challenged policy is moot and that the Forest Service's current policy is lawful. She gave assurance that the Forest Service "will no longer" withhold appraisals approved for agency use and related materials under Exemption 5 under the deliberative process privilege. *Porup*, 997 F.3d at 1232; 2d Scofield Decl. ¶ 4. She explained that "[g]oing forward, [a]gency personnel must follow the new guidance," which is phrased using "words of requirement" that give FOIA processors no "degree of discretion," *Porup*, 997 F.3d at 1232, such as "will no longer" and "cannot," 2d Scofield Decl. ¶ 4.

Nor can there be any doubt as to Ms. Scofield's authority and competence to provide this assurance. As the Forest Service's "National FOIA Officer" and "Assistant Director, Freedom of Information Act," Ms. Scofield is "the head of the Forest Service's FOIA program," with the "authority to set the Forest Service's general FOIA policy and practice." 2d Scofield Decl. ¶ 1; *compare Porup*, 997 F.3d at 1232 (declaration of "Information Review Officer for the Litigation Information Review Office," the "senior [agency] official" who was primarily "responsible for managing FOIA requests," sufficed to demonstrate mootness (cleaned up)). While the Department of Agriculture and more senior Forest Service officials can override Ms. Scofield's decisions, none have done so with respect to the policy at issue here. 2d Scofield Decl. ¶¶ 1, 4.

For all these reasons, Colorado Wild's purported challenge to the Forest Service's former FOIA policy or practice is moot.

## CONCLUSION

For all of the foregoing reasons, this Court should grant the Forest Service's motion to dismiss and for summary judgment, deny Colorado Wild's cross-motion for summary judgment, and enter judgment for the Forest Service.

Dated: February 27, 2023

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/
    BRADLEY G. SILVERMAN
    D.C. Bar #1531664
    Assistant United States Attorney
    601 D Street NW
    Washington, DC 20530
    (202) 252-2575
    bradley.silverman@usdoj.gov

*Attorneys for the United States of America*

29