UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **COLORADO WILD PUBLIC LANDS**,<br><br>Plaintiff,<br><br>v.<br><br>**U.S. FOREST SERVICE**,<br><br>Defendant. | Case No. 21-cv-2802 (CRC) |

## MEMORANDUM OPINION

The present dispute calls to mind Andrew Jackson marching his troops into New Orleans in January 1815 for one final battle with the British even though, unbeknownst to Jackson, the War of 1812 had already been resolved.[1] Sometimes, those on the frontlines are the last to recognize that the war is over.

In early 2021, Colorado Wild Public Lands ("COWPL") submitted multiple Freedom of Information Act ("FOIA") requests to the United States Forest Service (the "Forest Service" or the "Service") for documents concerning the Service's evaluation of a proposed land exchange in the San Juan National Forest, including third-party appraisals of the relevant parcels. After the Service refused to produce most of the requested evaluation documents based on internal policies that forbade disclosing such documents until the appraisals have been approved for agency use and the land exchange has been finalized, COWPL filed the present action that October. The Service eventually turned over most of the requested documents, save for redactions under FOIA Exemptions 5 and 6, and then moved for summary judgment on the ground that it had produced all reasonably segregable, non-exempt portions of the responsive records. COWPL responded

---

[1] The Treaty of Ghent, which ended the hostilities, was signed on Christmas Eve 1814.

by filing a cross motion for summary judgment on its claim that the Service's policy and practice of withholding appraisal documents until a land exchange is completed violates FOIA.

The Court resolved these dueling motions in a September 2023 memorandum opinion. Starting with the contested redactions, the Court found that the "Service uniformly failed to justify its assertions of the deliberative process privilege under Exemption 5 because it either failed to show that the withheld material was deliberative or that disclosure would harm an interest protected by that exemption." Colo. Wild Pub. Lands v. U.S. Forest Serv., No. 21-cv-2802 (CRC), 2023 WL 5846678, at *5 (D.D.C. Sept. 11, 2023). By contrast, the Court found the Service "for the most part [had met] its burden of proving that it validly withheld material under Exemption 6, with the lone exception that it did not demonstrate that real estate agents have a substantial privacy interest in keeping their contact information private given that it is likely already in the public domain." Id. The Court accordingly granted the Service's motion for summary judgment in part and denied it in part. Because COWPL did not cross-move on the withholdings that the Service failed to justify, however, the Court could not award summary judgment on the matter and instead "invit[ed] COWPL to file a motion for summary judgment on these remaining redactions." Id. at *11. Turning to COWPL's cross motion, the Court agreed that "the Forest Service ha[d] an unlawful policy and practice of withholding land exchange records until after the Service ha[d] officially approved of the documents and finalized the land exchange, even though it often provide[d] this information to third-party proponents of these exchanges." Id. The Court thus awarded summary judgment to COWPL on the policy-or-practice claim that the conservation group had advanced in its complaint and cross motion. See id. at *15.

From there, things initially proceeded as expected. COWPL swiftly accepted the Court's invitation, moving for summary judgment on the Forest Service's failure to justify certain withholdings and requesting that the Court direct the Service to produce any unlawfully withheld records within 10 working days. See Mot. Summ. J. at 3. The Forest Service, in turn, responded two weeks later by filing a motion to dismiss the remaining claims as moot on the ground that the Service had reproduced all materials to COWPL without the problematic redactions. See Mot. Dismiss at 2. In support of its motion, the Forest Service appended a declaration from Melissa Darr, a Government Information Specialist at the Service, explaining that:

> On Monday, September 25, 2023, at approximately 4:18 PM EST, I sent Matt Kenna, an attorney for Plaintiff Colorado Wild Public Lands, an updated reissuance letter for the FOIA appeal at issue in this case, as well as a link to a file-storage website to which I had uploaded the records at issue in this case, with all redactions under Exemption 5 and all redactions under Exemption 6 for realtors' contact information lifted. The only remaining redactions were those under Exemption 6 for the personal information of persons other than realtors.

Id., Ex. 2 ("Darr Decl.") ¶ 2. The Service also included the email by which Ms. Darr shared the requested documents via a reissuance letter with the counsel who had represented COWPL in the agency appeal. See id., Ex. 1. With all outstanding records now in COWPL's hands, the Service reasonably gathers that there is nothing left of this dispute.

And still, COWPL remains unsatisfied. In opposing the motion to dismiss, COWPL first contends that the Forest Service failed to demonstrate that it fully satisfied its FOIA duties with respect to the specific record requests at issue. See Opp'n at 1–6. Next, it asserts that this case remains live because the voluntary release of these contested records perpetuates the Service's supposed illegal "pattern[s] and practice[s] of denying access to agency records until well after the administrative procedures close" and inadequately explaining its initial FOIA decisions when

3

releasing records during litigation. Id. at 6–7. Finally, even if the present dispute is indeed moot, COWPL urges the Court to enter judgment in its favor anyway. See COWPL Reply at 2.

By continuing to litigate, it seems COWPL is having a hard time accepting "yes" for an answer. For starters, the Court fails to see how the Forest Service's declaration that it released all records for which the Court did not award it summary judgment does not moot this case. As noted, the Forest Service attached to its motion a declaration from Ms. Darr explaining that it was re-releasing the requested documents without redactions, save for "the personal information of persons other than realtors." Darr Decl. ¶ 2. In other words, the Service attested that it had released all requested documents except for the narrow redactions under Exemption 6 that the Court had upheld in its previous opinion. See Colo. Wild Pub. Lands, 2023 WL 5846678, at *9–11. This official declaration is accorded a presumption of good faith, see Mobley v. CIA, 806 F.3d 568, 581 (D.C. Cir. 2015), and COWPL supplies no reason to second guess this sworn statement attesting that the Forest Service removed all redactions on which it did not prevail in the prior outing.

COWPL's various complaints over *how* the Forest Service released these records are similarly unavailing. It whinges that the Forest Service did not provide a new Vaughn Index when releasing the records. Opp'n at 2. But agencies are not required to file a Vaughn Index, see DiBacco v. U.S. Army, 795 F.3d 178, 186 n.2 (D.C. Cir. 2015), and it is doubtful that one would be useful here given that the Service clearly explained that the only redactions remaining are the personal materials (other than realtor contact information) lawfully withheld under Exemption 6. There is also no requirement that agencies file an "updated reissuance response letter" with the Court, as COWPL suggests. See Opp'n at 4–5. But, for good measure, the Service now has done so. See Forrest Service Reply, Ex. 2. COWPL also protests that Ms. Darr

4

sent the reissuance letter, signed by Deputy Director French, to the counsel who handled the administrative appeal rather than to litigation counsel. See Opp'n at 5. Yet the fact that Ms. Darr did not herself sign the reissuance letter is immaterial because she still had personal knowledge of its contents. And it makes no difference that she sent the letter to appeal counsel. Producing the records in this manner was perfectly sensible, and, regardless, the Forest Service has now sent the letter to COWPL's litigation counsel as well. See Forest Service Reply, Ex. 1.

The efforts to keep the case alive with late-breaking "policy-or-practice" claims fare no better. COWPL now maintains that "[u]nlike the policy applicable to appraisals that the Court declared unlawful" in its prior opinion, the Forest Service's delayed release of these records perpetuates its "pattern and practice of denying access to agency records until well after the administrative procedures close." Opp'n at 6. It also takes issue with the Service's "production via the administrative appeals process instead of through litigation as well as the inadequate agency statements regarding the release." Id. at 7. To the extent these are truly new claims, COWPL offers no reasoned account for why it did not raise them when it moved for summary judgment on its policy-or-practice claim that the Forest Service was withholding appraisal records until after it had finalized land exchanges. Indeed, COWPL was mum on these grievances even when moving for summary judgment on all remaining claims this go around. Those were the proper times to raise such arguments. And yet, despite ample opportunity, COWPL never raised the objections—let alone marshal evidence proving a pattern or practice.[2] Accordingly, the Court will not expand the dispute by entertaining these contentions, as it is

---

[2] To the extent COWPL could not have raised its challenge to the Service's "use of the appeals processes during litigation to avoid judicial oversight" sooner because this challenge only came into focus during this litigation, see COWPL Reply at 2, that only underscores the fact that this grievance falls outside the proper scope of the complaint. Moreover, COWPL has never alleged or demonstrated that this supposed tactic is part of any systemic policy or practice.

well-established that a plaintiff "cannot keep [a] case alive indefinitely by shifting [its] legal theories at the last minute." Price v. Unite Here Local 25, 883 F. Supp. 2d 146, 154 (D.D.C. 2012); see, e.g., Oceana, Inc. v. Pritzker, 24 F. Supp. 3d 49, 72 (D.D.C. 2014) ("[P]laintiff's failure to raise arguments or theories in its motion for summary judgment results in waiver of those arguments.").

Nor is it necessary to venture down this road at this late juncture. COWPL complains that the Forest Service has a systemic policy of delaying the release of records until the close of administrative proceedings. If true, this would violate the Court's binding directive that, in each instance, the Service "must apply FOIA's rules to determine whether the information falls within a statutory exemption, whether it has waived the exemption through prior disclosures, whether releasing the information will cause harm, and whether there is a way to reasonably segregate and release all non-exempt information." Colo. Wild Pub. Lands, 2023 WL 5846678, at *15. The Court has no doubt that the Service already received this message loud and clear, and it does not need repeating.[3]

As a final entreaty, COWPL urges the Court to award it summary judgment "without further consideration of Defendant's unsupported motion to dismiss." See COWPL Reply at 2. Of course, the Court cannot simply skip over the "threshold" issue of mootness and pass judgment on stale disputes. Southern Co. Servs., Inc. v. FERC, 416 F.3d 39, 43 (D.C. Cir. 2005). And, once again, it fails to see how doing so here would materially advance COPWL's interests. The Court suspects that COWPL's insistence on a ruling on its now-moot motion for

---

[3] COWPL renews its request that the Court refer this matter to a Special Counsel to ensure the Forest Service's compliance with FOIA going forward. See Opp'n at 7. Once more, the Court does "not believe such referral is appropriate in this case because it is confident that the Forest Service will act to bring its policies into compliance with FOIA." Colo. Wild Pub. Lands, 2023 WL 5846678, at *15.

summary judgment is motivated by a fear that the Forest Service's "voluntary" release of the records may be a covert effort to minimize "recovery in the upcoming statutory attorney's fees phase of this litigation." Opp'n at 2–3. Such fears are unwarranted because, under FOIA, a plaintiff is eligible for attorney's fees and costs when it "substantially prevail[s]," meaning its "suit yields relief in the form of 'a judicial order, or an enforceable written agreement or consent decree' or 'a voluntary or unilateral change in position by the agency.'" Davis v. U.S. Dep't of Just., 610 F.3d 750, 752 (D.C. Cir. 2010) (quoting 5 U.S.C. § 552(a)(4)(E)(ii)). It is patently obvious that the Service's release of the remaining records was a response to this litigation and, more specifically, this Court's prior decision. A formal entry of judgment would therefore be just that: a mere formality devoid of consequence. More importantly, any fight over attorney's fees is a skirmish for another day. For now, it is enough to recognize that the current campaign concluded when the Forest Service waived the white flag by releasing the remaining records.

    For these reasons, the Court hereby grants the Forest Service's Motion to Dismiss and denies as moot COWPL's Motion for Summary Judgment. The Court will retain jurisdiction over all matters relating to the award of attorney's fees and costs. A separate Order will follow.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: April 10, 2024