## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COLORADO WILD PUBLIC LANDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 21-2802 (CRC) |
| | ) |
| UNITED STATES FOREST SERVICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF'S REPLY IN SUPPORT OF PETITION
## FOR STATUTORY ATTORNEYS' FEES AND COSTS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ 3

INTRODUCTION AND SUMMARY ......................................................................................... 5

FACTUAL BACKGROUND ....................................................................................................... 9

   A.   Phase 1: Preparing the Complaint and Reviewing Productions for FOIA Compliance. 10

   B.   Phase 2: Defendant's Summary Judgment Motion; Initial Settlement; Narrowing of Issues ................................................................................................................................ 10

   C.   Phase 3: Motion to Enforce the AUSA/Forest Service-Approved Settlement Agreement. ............................................................................................................................................ 10

   D   Phase 4: Dispositive Briefing ........................................................................................ 11

   E.   Phase 5: Plaintiff's Second Motion for Summary Judgment; Government's Reply to Motion for Summary Judgment and Motion to Dismiss and Response ......................... 11

   F.   Phases 6-7: Post-Dispositive Motions Practice Attempted Resolution of Statutory Attorney's Fees and Costs, and Briefing the Fee Petition. .............................................. 13

STATUTORY CONTEXT FOR ATTORNEY FEES UNDER FOIA ....................................... 14

ARGUMENT ............................................................................................................................. 15

   A.   Eligibility and Entitlement are Stipulated by the Parties and Supported by Evidence .. 16

   B.   The Lodestar Calculation is Reasonable ....................................................................... 17

        1.   COWPL's Hours are Reasonable and Compensable ................................................. 18

        2.   The Response Fails to Rebut the Presumption of Reasonableness of COWPL's Evidence and Lodestar Calculation. ......................................................................... 19

               a.   COWPL achieved a high degree of success. ............................................. 20

               b.   COWPL's lodestar calculation is reasonable given the unique legal arguments and factual requirements of this case. .................................... 21

               c.   COWPL's efforts to settle this case are reasonable and compensable. .... 23

               d.   Work billed by the two attorneys in this case is reasonable, appropriate, and compensable. ................................................................................................... 24

               e.   Defendant's proposed reductions to the lodestar amount are confusing, arbitrary, and meritless. ............................................................................ 25

        3.   Fees-on-Fees Hours are not Excessive. ................................................................... 26

        4.   Counsels' Hourly Rates are Reasonable ................................................................. 27

   C.   Total Loadstar Calculation, Costs, and Reduction ........................................................ 28

CONCLUSION ........................................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. FBI,* 541 F. Supp. 2d 274 (D.D.C. 2008)................................................................. 6

*Ashraf-Hassan v. Embassy of France in the United States*, 189 F. Supp. 3d 48 (D.D.C. 2016).. 21

*Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86 (D.C. Cir.1986).............................................. 22

*Bloomgarden v. United States DOJ*, 253 F. Supp. 3d 166 (D.D.C. 2017) .................................... 6

*Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991)............................................... 21

*Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63 (D.D.C. 2016)....................................... 22

*Citizens for Responsibility & Ethics in Wash. v. United States VA*, 134 F. Supp. 3d 63 (D.D.C.
    2015)................................................................................................................................. 7, 12

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ................................................................. 18, 26

*City of Riverside v. Rivera*, 477 U.S. 561 (1985) ................................................................... 18, 19

*Copeland v. Marshall*, 641 F.2d 880, (D.C. Cir. 1980) ................................................... 14, 15, 20

*Covington v. Dist. of Columbia*, 57 F.3d 1101 (D.C. Cir. 1995) ................................ 8, 15, 17, 27

*Cuneo v. Rumsfeld*, 553 F.2d 1360 (D.C. Cir. 1977)..................................................................... 8

*Eison v. Kallstrom*, 75 F. Supp. 2d 113 (S.D.N.Y. 1999)............................................................ 22

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Security*, 197 F. Supp. 3d 290 (D.D.C. 2016).......... 23

*Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149 (D.D.C. 2015) .......... 23

*Elec. Privacy Info. Ctr. v. National Security Agency,* 87 F. Supp. 3d 223 (D.D.C. 2015)........... 26

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56 (D.D.C. 2013)...... 27

*Env't Integrity Project v. Gen. Servs. Admin.*, 2021 WL 3464337 (D.D.C. Aug. 6, 2021).......... 24

*Fox v. Vice,* 563 U.S. 826 (2011).............................................................................................. 26

*Goos v. National Ass'n of Realtors*, 68 F.3d 1380 (D.C. Cir. 1996) ........................................... 18

*Hajro v. USCIS*, 811 F.3d 1086 (9th Cir. 2015) ........................................................................ 22

*Hall v. Cent. Intel. Agency*, 115 F. Supp. 3d 24 (D.D.C. 2015) ........................................... 24, 28

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................... 16, 18 20

*In re Olson*, 884 F.2d 1415 (D.C. Cir.1989)................................................................................ 20

*Jud. Watch, Inc. v. United States Dep't of Homeland Sec.*, 895 F.3d 770 (D.C. Cir. 2018)......... 22

*Judicial Watch, Inc. v U.S. Dept. of Justice*, 878 F. Supp. 2d. 225 (D. D.C. 2012) ..................... 18

*Mayock v. I.N.S.*, 736 F. Supp. 1561 (N.D. Cal. 1990)................................................................ 22

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319 (D.C. Cir. 1982)  6, 15, 20, 26

*Nat'l Sec. Couns. v. C.I.A.*, 898 F. Supp. 2d 233 (D.D.C. 2012) ................................................. 22

*Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) .................................. 19

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) ........ 14, 15, 19

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) .............................................................. 14

*Piper v. United States DOJ*, 339 F. Supp. 2d 13 (D.D.C. 2004) ................................................... 6

*Protect the Public's Tr. v. IRS*, 2024 U.S. Dist. LEXIS 27007 (D.D.C. Feb. 16, 2024) .............. 16

*Pub. Citizen v. Heckler*, 653 F. Supp. 1229 (1986) .................................................................... 17

*Rosenfeld v. U.S. Dep't of Just.*, 904 F. Supp. 2d 988 (N.D. Cal. 2012) ..................................... 24

*Sierra Club v. United States Env't Prot. Agency*, 2021 WL 7210058 (D.D.C. Mar. 31, 2021) ... 25

*Weisberg v. U.S. Dep't of Just.*, 1987 WL 11984 (D.D.C. May 28, 1987) .................................... 23

*Wiley v. Portfolio Recovery Assocs.*, LLC, 594 F. Supp. 3d 1127 (D. Minn. 2022) ................... 27

*Williams Enters., Inc. v. Sherman R. Smoot Co.,* 938 F.2d 230 (D.C. Cir. 1991) ......................... 6

## Statutes

28 U.S.C. § 1927 ........................................................................................................... 6, 12

5 U.S.C. § 552(a)(1)(E) ....................................................................................................... 5

5 U.S.C. § 552(a)(1)(E)(i) ................................................................................................... 5

5 U.S.C. § 552(a)(4)(E)(i) ........................................................................................... 14, 16

5 U.S.C. § 552(b) ............................................................................................................... 10

## Rules

Fed.R.Civ.Pro. 11 ....................................................................................................... 6, 12

Fed.R.Civ.Pro. 54(d)(2)(B)(iii) ...................................................................................... 5,14

Fed.R.Civ.Pro. 54(d)(2)(B)(iii) ......................................................................................... 6

## Other Authorities

Open Government Act of 2007, S. Rep. No. 110-59 (2007) ........................................... 9

S.Rep. No.94–1011, (1976), U.S. Code Cong. & Admin. News 1976 ........................ 18

## INTRODUCTION AND SUMMARY

Plaintiff Colorado Wild Public Lands ("COWPL"), by and through undersigned counsel, respectfully filed a Motion for Statutory Attorneys' Fees and Costs ("Fee Motion") in this Freedom of Information Act ("FOIA") case. 5 U.S.C. § 552(a)(1)(E)(i).  The Fee Motion was supported by detailed time sheets and declarations establishing a lodestar calculation and presumptively reasonable amount of fees.  The presumptively reasonable lodestar calculation was opposed without any contrary declarations to rebut Plaintiff's evidence.

Although an Assistant United States Attorney ("AUSA") represents the United States when filing briefs in this litigation, this Reply seeks to ensure COWPL's counsel are compensated for time-consuming tactics and arguments deployed by the AUSA in conferring and opposing the Fee Motion and to ensure attorneys are available for FOIA requesters seeking judicial review to pierce agency secrecy that Congress sought to overcome in passing FOIA's fee shifting provision. Dkt. 51 ("Fee Motion") at 13-14.  Fee settlement conferral revealed that the AUSA did not have authorization to discuss compromise or specific settlement terms, and that the AUSA was advancing a frivolous timeliness defense raised in prior filings that lacked any basis in law or fact. Dkt. 46 Motion for Clarification), Dkt. 48 (Defendant's Reply).  The AUSA never provided any basis for a timeliness defense beyond a bare reference to Rule 54. *Id.*

As with other litigation phases, the AUSA's tenacious litigation tactics during conferral on fees required COWPL to research and brief the Rule 54 timeliness the AUSA floated to reject COWPL's effort to reach a compromise on the reasonable amount of fees. The Fee Motion was indeed timely. Dkt. 44 at 44 at 7; Dkt 51 at 5. Although the Response did not address timeliness, the Response attempted to gloss over the AUSA's assertion of timeliness during fee settlement negotiations, which required COWPL to research and analyze the AUSA's timeliness assertion. Dkt. 52 at 10 ("The Forest Service ultimately elected not to challenge the timeliness of Colorado

Wild's fees motion, but at the time wished to preserve this argument."). Similarly, in light of the United States' rejection of previous AUSA representations regarding agreements between the parties, COWPL provided a short recitation of the facts and law in the Fee Motion to ensure the Court was apprised of the statutory basis and facts supporting Plaintiff's undisputed eligibility and entitlement for the FOIA fee award. Dkt. 51 at 15-17.

COWPL' Fee Motion, and conferral letter seeking compromise, provided detailed basis and billing statements to establish the lodestar calculation. Dkt. 51-1 – 51-4. By contrast, the Response provided no declaration or other admissible evidence to rebut proffers filed with Plaintiff's Fee Motion. Fed.R.Civ.Pro. 54(d)(2)(B)(iii); Dkts. 51-2 to 51-4.

> When the Government seeks to rebut a rate or calculation or hours billed, it must provide just as plaintiff must provide specific evidence in his application for attorney's fees— equally specific countervailing evidence.

*Bloomgarden v. United States DOJ*, 253 F. Supp. 3d 166, 175 (D.D.C. 2017) quoting *Piper v. United States DOJ*, 339 F. Supp. 2d 13, 24 (D.D.C. 2004) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982).[1]

Instead of "specific countervailing evidence," id., the Response makes wild and unfounded accusations, without citation to even a scintilla of supporting evidence, that allege COWPL's attorneys "intended to inflate Colorado Wild's eventual fees award." Dkt. 52 at 26. Although most parties and their attorneys would be constrained from making unfounded accusations by the sanctions provisions of Fed.R.Civ.Pro. 11, 28 U.S.C. § 1927, or the Court's inherent authority[2], the United States, agency defendants, and the AUSA are generally protected by sovereign immunity from facing any financial consequence or sanction for filing bare

---

[1] Both parties cite this line of authority. Dkt. 51 at 20, Dkt. 52 at 31.

[2] *Alexander v. FBI,* 541 F. Supp. 2d 274, 303 n.47 (D.D.C. 2008) (discussing potential sanctions for government attorneys made unavailable by sovereign immunity) quoting *Williams Enters., Inc. v. Sherman R. Smoot Co.,* 938 F.2d 230, 237 (D.C. Cir. 1991) (warning that "we may penalize counsel for raising arguments so wholly without merit" under Section 1927).

accusations regarding the intentions of COWPL's attorneys. *Citizens for Responsibility & Ethics in Wash. v. United States VA*, 134 F. Supp. 3d 63, 67 n.1 (D.D.C. 2015) (noting that sovereign immunity regarding inherent authority is unsettled).  The tactics and arguments in opposition to the Fee Motion, taken as a whole, constitute a series of unfounded legal and factual accusations that disregard the legislative intent and purpose of FOIA's fee-shifting provisions.

On the facts of this litigation, Plaintiff reasonably engaged each battle presented on fees, just as each battle was engaged in order to win the war on the merits, knowing that fees are available for representation that may not appear victorious in isolation from the other phases of the litigation.  There were numerous offramps available to the United States preceding the complaint, throughout the litigation, and before filing the fee motion that would have avoided or minimized compensable fees to which Plaintiff is now entitled. During the merits phase, Plaintiff sought to avert litigation when it requested relief through administrative appeals processes. Dkt. 1 at ¶ 20; Dkt. 9 at ¶ 20 (admitted). Plaintiff sought to conclude the litigation when the AUSA and agency agreed to a detailed, substantive settlement proposal with relief far less than what the Court ultimately determined was appropriate. Dkt. 20; Dkt. 36 at 2.  Plaintiff reasonably, but unsuccessfully, sought to enforce the agency-approved settlement agreement to avoid dispositive briefing on the agency burdens and the policy/practice claim. Dkt. 20; Dkt. 52 at 9 (admitted as to agency-approval of the settlement).  Plaintiff sought to revive settlement negotiations after the Court declined to enforce the agreement, but Defendant elected instead to revive its previously filed summary judgment motion despite acknowledgment that the agency withholdings and policies practices were unlawful. Dkt. 52 at 9.  Plaintiff voluntarily dismissed search issues, without prejudice, to conserve judicial resources and to allow Plaintiff to pursue remedy of the appraisal-related withholdings and policies. Dkt. 51 at 11; Dkt. 52 at 9.

Most notably, once COWPL was able to cut through the numerous defenses, Defendant made no attempt to defend the policies underlying the unlawful withholding of federal land exchange appraisals.  Dkt. 36 at 8 ("The Forest Service does not mount a substantive defense of these policies.").  Defendant's tenacious opposition tactics that continues into the fees phase of this litigation, if accepted, would invite government-paid attorneys to use whatever tactics are available to shield indefensible agency positions.

During the fees phase, Plaintiff attempted to avoid judicial involvement by proposing a settlement that would have resolved statutory fees and costs. Dkt. 51 at 12-13. Instead of seeking compromise, Defendant rejected the settlement proposal on the basis of an unvetted and meritless timeliness defense that was later abandoned. Dkt. 52 at 9.  Instead of seeking compromise or providing "specific countervailing evidence" to rebut the presumption created by COWPL's submittal of four sworn declarations, the Response attacks the lodestar calculation based on assertions contained in a brief. *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1109-10 (D.C. Cir. 1995).

FOIA's waiver of sovereign immunity, FOIA's fee-shifting purposes, policies supporting settlement efforts, and the facts of this litigation preclude the United States from allowing the AUSA to litigate tenaciously, and then complain about the presumptively reasonable loadstar calculation without providing rebuttal evidence. *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1363-64 (D.C. Cir. 1977).  Allowing the United States to rely entirely on the losing AUSA's characterizations of a prevailing Plaintiff's sworn declarations and billing statements, without submitting specific evidence to rebut the fee claim, would deny COWPL its reasonable fee request and deter qualified attorneys from bringing meritorious FOIA litigation.

More broadly, denying COWPL's request as urged by the Response would hinder FOIA requesters' access to attorneys who remain willing to spend the uncompensated hours required to

reasonably engage and anticipate the often unauthorized and tenacious litigation tactics of

unaccountable AUSAs. Dkt. 51-1 at ¶19 (Rickenbaugh Decl.), 51-2 at ¶¶13 (Kenna Decl.)

(unopposed testimony that "this tenaciously-defended litigation [...] would warrant significant

upward adjustment), *id*. at ¶4 ("awarding the full amount requested ensures that counsel are

available to take meritorious cases where it is apparent that the agency and Department of Justice

are going to contest nearly every aspect of the FOIA litigation.").  COWPL's claims were not

only meritorious, Defendant's policies were indefensible on the merits. Dkt. 36 at 8.  Congress

squarely rejected Department of Justice lobbying and legal theories that deny or reduce

attorney's fees for prevailing FOIA requesters. Dkt. 51 at 22 citing Open Government Act of

2007, S. Rep. No. 110-59 (2007).  COWPL's lodestar calculation is reasonable. Ex. 1 at ¶14.

## FACTUAL BACKGROUND

The background of the underlying land exchange and administrative phase of the FOIA

litigation are not contested. Dkt. 1 at ¶¶43-77; Dkt. 9 at ¶¶ 43-77. There is no dispute that

COWPL worked diligently to avoid litigation related to its requests for valuation documents for

the Valle Seco land exchange when it submitted FOIA requests in March and May of 2021,

COWPL submitted FOIA requests followed by two administrative appeals resulting in

Defendant's release of responsive records in a "slow trickle" with "hefty redactions." Dkt. 36 at

3.  There is no dispute that redactions were predicated on the application of internal Forest

Service policies[3] "forbidding the release of valuation documents until the Service had approved

them for agency use and, even then, not until the Service had finalized the proposed land

exchange." Dkt. 36 at 3-4.

---

[3] The policies remain unchanged. Dkt 51 at 10, FN1. The Response does not identify any action
taken to remedy the offending policy.

The Response does not take issue or provide countervailing evidence to rebut the basic

facts of the various phases of the litigation, and instead relies on conclusory assertions of the

AUSA, and comparison with inapposite fee opinions.  The facts, based on Plaintiff's unrebutted

declarations, are addressed in the same order presented in Plaintiff's motion. Dkt. 51 at 6-12

A. **Phase 1: Preparing the Complaint and Reviewing Productions for FOIA Compliance**

There is no dispute that following its timely appeals, COWPL filed the complaint

initiating this litigation. Dkt. 1; Dkt. 36 at 5.  The Response does not provide any evidence to

rebut any fact asserted in the Fee Motion. Compare Dkt. 52 at 8 with Dkt. 51 at 7-8.

B. **Phase 2: Defendant's Summary Judgment Motion; Initial Settlement; Narrowing of Issues**

There is no dispute that On February 11, 2022, the Forest Service moved for summary

judgment on the assertion that it produced all reasonably segregable, non-exempt portions of the

record and that the remaining redactions fall within the statutory exemptions under 5 U.S.C. §

552(b). Dkt. 36 at 7.  The Response does not provide any evidence to dispute any fact asserted in

the Fee Motion. Compare Dkt. 52 at 8 with Dkt. 51 at 8-9.

C. **Phase 3: Motion to Enforce the AUSA/Forest Service-Approved Settlement Agreement.**

The Response does not provide any evidence to rebut the showing that, although the

Court declined to enforce the settlement agreement, the hours reasonably expended by counsel

for COWPL preparing the Motion to Enforce were not in vain. Dkt. 52 at 8.  There is no dispute

that the settlement efforts created evidence, legal research, and arguments that formed and

confirmed the factual and legal basis for Plaintiff's subsequent Cross Motion for Summary

Judgment and Response to Defendant's Motion for Summary Judgment. Dkt. 51 at 9-10.  Indeed,

the Court's Order relied on filings in support of the Motion to Enforce that COWPL later cited

during summary judgment to establish the existence of an agency policy in the agency Manual,

Handbook, and agency practice that delayed release of appraisal information involving land exchanges that would continue in full force without equitable judicial relief that reaches beyond the responsive agency records themselves. Dkt. 36 at 4.

### D      Phase 4: Dispositive Briefing

There is no dispute that the AUSA summarily rejected all overtures seeking to revive settlement negotiations after the motion to enforce was denied, electing instead to renew its previously filed summary judgment motion. Dkt. 28 at 1; Dkt. 52 at 8.  There is no dispute that COWPL narrowed the issues and sought to limit judicial involvement by requesting that the search issues be voluntarily dismissed without prejudice to conserve judicial resources and allow Plaintiff to pursue remedy of the appraisal-related withholding decisions. *Id*., Dkt. 29 at 2-3.

Similarly, there is no dispute that COWPL, citing the burden FOIA places on the agency to justify its withholdings, also sought to simplify the litigation by not filing a cross motion for summary judgment on Exemption 5 and 6 withholdings and instead filed a cross motion for summary judgment focused on the Forest Service's unlawful withholding policy.

There is no evidence to rebut the evidence that the AUSA tenaciously forwarded a series of largely meritless defenses during summary judgment briefing, requiring counsel for COWPL to expend additional time responding to each assertion and legal theory.  The series of arguments were disposed of by the Court. *See e.g*., Dkt. 36 at 25-28 (rejecting Rule 8 argument asserting that Plaintiff failed to adequately raise a pattern and practice claim); Dkt. 36 at 28-32 (rejecting Defendant's argument that Plaintiff's policy claims were moot).

### E.      Phase 5: Plaintiff's Second Motion for Summary Judgment; Government's Reply to Motion for Summary Judgment and Motion to Dismiss and Response

With no evidence of intent or improper motive, Defendant asserts that filing the court-invited, three-page motion for summary judgment was "a tactic intended to inflate Colorado

Wild's eventual fees award." Dkt. 52 at 26.  The scurrilous, false accusation is part of a series of

baseless accusations made by the losing AUSA in the briefing. See e.g. *id*. at 26-27 (accusing

COWPL's attorneys of "prolonging litigation to maximize one's eventual fees award" and

gamesmanship).  The AUSA's accusations are false and without any basis. Ex. 1 at ¶8-9 (Supp.

Stills Declaration).  Although Defendant's accusation would likely subject a non-governmental

party and its attorney to judicial sanctions, the AUSA's accusations are likely made without any

accountability. *Citizens for Responsibility & Ethics in Wash. v. United States VA*, 134 F. Supp.

3d 63, 67 n.1 (D.D.C. 2015) (although AUSAs are generally protected from consequences of

Fed.R.Civ.Pro. 11 and 28 U.S.C. § 1927, it is unsettled as to the Court's inherent authority).

     There is no dispute that on September 11, 2023, the Court invited COWPL to file a

motion for summary judgment on the remaining Exemption 5 and 6 withholdings the Court

determined the agency had uniformly "failed to justify" in light of the agency burden. Dkt. 36 at

24. Immediately thereafter, on September 15, 2023, COWPL submitted a concise three-page

cross motion for summary judgment that largely relied on previous filings, the Court's Order

(Dkt. 36), and the law-of-the-case doctrine. Dkt. 37. *Id*.  In response, and in an effort to moot the

invited motion, on September 25, 2025, Defendant purported to "voluntarily release" unredacted

versions of the documents addressed by the Order by responding to the FOIA Appeal. Dkt. 52 at

25 citing Dkt. 38-1 (Defendant's email circumventing litigation counsel).  A jurisdictional

motion to "dismiss Plaintiff's remaining claims as moot" was filed September 29, 2023. Dkt. 38.

     The AUSA asserts in Response, with no evidence from Defendant agency, that "[h]ad

[COWPL] simply asked the Forest Service to release these materials, the Forest Service would

have." *Id*. at 25.  The judicial record and Plaintiff's declarations provide unrebutted evidence that

the Forest Service was not willing to produce records based on a mere request. Dkt. 51-1 at ¶¶15-

17.  Plaintiff was concerned that Defendant's use of the Administrative Appeal to disclose the

records instead of production to COWPL's litigation counsel, coupled with a Motion to Dismiss, was a tactical maneuver that might impact COWPL's fee recovery. Dkt. 40 at 3-4.  A second release of records, this time to litigation counsel, was made September 24, 2023. Dkt. 42-1, 42-2. Plaintiff's concern over defense tactics apparently designed to avoid any fee recovery was recognized, and quashed, when the Court specifically maintained jurisdiction to resolve "all matters relating to the award of attorney's fees and costs." Dkt. 36 at 6-7, Ex. 1 at ¶9.

F.      **Phases 6-7: Post-Dispositive Motions Practice Attempted Resolution of Statutory Attorney's Fees and Costs, and Briefing the Fee Petition.**

There is no dispute that the AUSA was not authorized to provide a formal response to Plaintiff's comprehensive fee settlement letter and offer sent in early June 2024. Dkt. 51 at 5. There is no dispute that the AUSA informally responded with an cursory email containing a patently unreasonable counteroffer, with drastic reductions to Plaintiff's offer that were not specifically tied to compensable hours documented in COWPL's billing statements.  There is no dispute that the AUSA's informal "counteroffer" email had not been vetted or approved by any person with settlement authority.  The AUSA, despite representing no authority to seek compromise regarding statutory fees on behalf of Defendant, agreed to stipulate to eligibility and entitlement factors.  In light of the inability of the AUSA to deliver on the previous merits agreement, the Fee Motion addressed each element of FOIA's statutory fee provision. Dkt. 51.

As anticipated, despite the stipulation, the Response mounts a series of arguments to exclude tasks related to "time spent litigating claims upon which the party seeking the fee did not ultimately prevail." ECF 52 at 21 quoting *Copeland v. Marshall*, 641 F.2d 880, 891-92 (D.C. Cir. 1980).  However, the Fee Motion confirms that COWPL prevailed on *all claims*. Dkt. 51 at 16 citing Dkt. 36 (order granting relief on the claim of unlawful withholding through unlawful search, withholding, and policy/pattern) *accord* Dkt. 1 at ¶¶83-89.

13

Skepticism as to this AUSA's representations and tactics remain justified. During conferral on the June 2024 fee settlement letter and the briefing schedule, the AUSA asserted that Plaintiff's Fee Motion was not timely pursuant to Rule 54. The AUSA took the firm position that most, and perhaps all, of COWPL's hours were not compensable because the Fee Motion would not be timely. Dkt. 44 at 6-7. The absence of any fact or authority in the Response to support the asserted timeliness defense confirms that COWPL reasonably prepared a Fee Motion and declarations that correctly anticipated full and tenacious litigation of every aspect of the Fee Motion. Dkt. 52 at 11.

## STATUTORY CONTEXT FOR ATTORNEY FEES UNDER FOIA

The Response does not contest that the statutory purpose of FOIA's fee shifting provision is to encourage citizens to bring FOIA requests to vindicate the public's statutory rights, and to incentivize government agencies to comply with FOIA requests. 5 U.S.C. § 552(a)(4)(E)(i); *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1363-64 (D.C. Cir. 1977). It is also undisputed that a "reasonable fee" must be sufficient to attract an adequate supply of capable counsel for meritorious cases. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). The underlying facts of the unlawful policies involved in the withholdings in this particular case, unlike opinions cited by Defendants that do not involve policy claims, provide the context for a the District Courts to "exercise their discretion as conscientiously as possible, and state their reasons as clearly as possible." *Copeland v. Marshall*, 641 F.2d 880, 893, (D.C. Cir. 1980) (en banc).

The Response contains no objection to the admissibility of the detailed billing sheets and declarations to support a lodestar calculation that establishes a "'reasonable' fee [that] is wholly consistent with the rationale behind the usual fee-shifting statute" *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The rebuttable presumption created by Plaintiff's declarations created Defendant's "duty to come forward with other evidence."

*Legille v. Dann*, 544 F.2d 1, 5-6 (1976).  Defendant's Response offers no "specific countervailing evidence," except for conclusory assertions made in the briefing.[4] **Error! Bookmark not defined.** *Covington*, 57 F.3d at 1109 (D.C. Cir. 1995).

## ARGUMENT

The Response does not openly dispute that COWPL is eligible for, and entitled to, an award of statutory costs and attorneys' fees for prevailing on all claims made in the Complaint. Dkt. 52 at 10 (admitted). COWPL, as the substantially prevailing party, achieved a high degree of success in this litigation. Work reasonably accomplished in pursuit of this result was established in detailed and unrebutted billing statements and declarations. Dkts. 51-2 to 51-4. The Response, without any evidence, contains a confusing and disjointed attack on nearly every aspect of Plaintiff's time entries, continuing the tenacious defense tactics encountered throughout this litigation giving rise to significant compensable time now requested by COWPL.

The Response relies heavily on district court precedents that are notoriously unhelpful in determining fees on the facts of a particular FOIA case.  Courts must instead make case-specific determinations and "exercise their discretion as conscientiously as possible, and state their reasons as clearly as possible." *Copeland*, 641 F.2d 880, 893 (D.C. Cir. 1980) (en banc). Because the United States has submitted <u>no sworn declaration</u> or other evidence to rebut the presumption of reasonableness beyond the non-prevailing AUSA's assertions in the Response, and on the facts presented in the motion, COWPL respectfully requests the Court accept Plaintiff's evidence, and use its "discretion to adjust the fee award upward or downward," to

---

[4]The Response instead chastises Plaintiff for meeting its burden to establish the reasonableness of the lodestar calculation through the preparation and submission of sworn declarations and asks the Court to penalize Plaintiff for time spent preparing this evidence. Dkt. 52 at 30-31, *but cf. Nat'l Ass'n of Concerned Veterans,* 675 F.2d 1319, 1327 (D.C. Cir. 1982).

grant Plaintiff the full amount of attorneys' fees sought. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).

### A. Eligibility and Entitlement are Stipulated by the Parties and Supported by Evidence

The Response asserts that the Court should reduce the fee award by twenty percent because COWPL included a brief recitation of facts and law supporting its eligibility and entitlement to fees. Dkt. 52 at 20-21.  On the facts and history of this litigation, it was not reasonable for COWPL to rely entirely on an AUSA's stipulation, made without benefit of authority from his superiors. *See, e.g.*, Dkt. 52 at 8 (acknowledging approval required for settlement negotiations).  COWPL's Fee Motion succinctly summarized facts and law to ensure there was evidence in the record to support the Court's discretion to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred" in a FOIA cases where "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).

The Response does not contest any fact or legal authority put forward to establish eligibility or entitlement based on obtaining judicial relief and substantial voluntary, unilateral changes in position by Defendant agency on all claims (search, withholding, and unlawful pattern/policy), that resulted in disclosure of withheld agency records sought by initiation and prosecution of this litigation. 5 U.S.C. § 552(a)(4)(E)(ii); *Protect the Public's Tr. v. IRS*, 2024 U.S. Dist. LEXIS 27007, at *13 (D.D.C. Feb. 16, 2024)**Error! Bookmark not defined.** (FOIA uses the phrase "obtained relief" to introduce both pathways to fee eligibility.).

As stipulated by the parties, and recognized by the Court, COWPL substantially prevailed. Dkt. 44 at p. 7 ("It is patently obvious that the Service's release of the remaining records was a response to this litigation and, more specifically, this Court's prior decision.").

**B.  The Lodestar Calculation is Reasonable**

The Lodestar amount is both substantial and reasonable, first because this complex, three-year litigation was not a "garden variety" FOIA case (Dkt. 36 at 8); and second, because the AUSA's tenacious litigation tactics set out in the Factual Background section above required significant time in each phase of the litigation.  The Response does not recognize the complexities or rarity of prevailing in a FOIA policy/practiced case and ignores Supreme Court precedent creating a "strong presumption" that the "lodestar" amount represents a "reasonable fee." Dkt. 51 at 18 citing *City of Burlington*, 505 U.S. at 561.**Error! Bookmark not defined.** The Response also ignores binding precedent confirming that in statutory fee litigation, "the burden shifts to the defendant to rebut the presumption of reasonableness with specific evidence." Dkt. 51 at 18, quoting *EPIC v. U.S. Dept. of Homeland Sec.*, 218 F. Supp. 3d 27, 47 (D.D.C. 2016) citing *Covington*, 57 F.3d at 1109.

Without supporting evidence, the Response takes the extraordinary position, despite stipulating to eligibility and entitlement, that the Court should deny COWPL's request for statutory attorney's fees and costs "in its entirety." Dkt. 52 at 3.  Defendant provided no declaration to rebut the detailed billing statements and declarations that establish the hours and rates underlying the presumptively reasonable lodestar calculation. *Covington*, 57 F.3d at 1109; *see also* ECF 51-2 (Kenna Decl.), Ex. 1 (Stills Decl.), ECF 51-4, Ex.2 (Kane Decl.).  Assertions in a brief filed on behalf of an agency do not constitute evidence and are insufficient here to rebut the presumptions afforded the Fee Motion and declarations. *Id*. accord *Pub. Citizen v. Heckler*, 653 F. Supp. 1229, 1239 (1986) (rejecting "bare assertions" in agency brief on potential consequences of granting relief).

Instead of indulging the AUSA's bare accusations and arbitrary/overlapping requests for percentage deductions (*supra* at 24-26), the Court may approve COWPL's presumptively

reasonable and unrebutted evidence to ensure qualified counsel will be willing to take cases

involving unlawful withholdings based on agency FOIA policies, despite Defendant's tenacious

litigation tactics that are diametrically opposed to FOIA's legislative purposes. See *City of*

*Burlington v. Dague*, 505 U.S. 557, 568 (1992) (citing S.Rep. No.94–1011, p. 6 (1976), U.S.

Code Cong. & Admin. News 1976, p. 5908).

### 1.      COWPL's Hours are Reasonable and Compensable

The Response does not engage "[t]he key question, [which] is whether the work was

reasonably done in pursuit of the ultimate result.  In other words, would a private attorney being

paid by a client reasonably have engaged in similar time expenditures?" *Goos v. National Ass'n*

*of Realtors*, 68 F.3d 1380, 1385-86 (D.C. Cir. 1996) (citation omitted).  Despite a surfeit of

accusations, the Response provides no evidence to establish that any of the entries failed to

"identify the general subject matter of [the] time expenditures." *Hensley*, 461 U.S. at 437 n.12.

The Response ignores binding authority establishing that to deny compensation, the

evidence must establish that "the time claimed is obviously and convincingly excessive under the

circumstances." *Riverside v. Rivera*, 477 U.S. 561, 570 n.4 (1985).  The Response even launches

a pages-long attack on results of the pending fee motion (Dkt. 52 at 27-31), although, "[i]t is

settled in this circuit that hours reasonably devoted to a request for fees are compensable."

*Judicial Watch, Inc. v U.S. Dept. of Justice*, 878 F. Supp. 2d. 225, 240 (D. D.C. 2012) (citation

and internal quotes omitted).  The 44-page Response confirms that COWPL correctly anticipated

that the Response would attack every aspect of the Fee Motion, often based on the veiled

assertion that COWPL did not prevail on its claims. *See e.g.*, Dkt. 52 at 13-14, Ex. 1 at ¶¶8-9.

COWPL's lodestar amount, although substantial, is reasonable on the facts of this policy

and practice FOIA case, which Defendant litigated vigorously and fought at every turn,

beginning in the earliest stages of the administrative phase up through and including the present

Fee Motion.  The Forest Service, represented by an undetermined number of lawyers in the USDA Office of General Counsel and US Attorney's Office, tenaciously litigated this FOIA case. Dkt. 36 at 1, 10; see also *City of Riverside*, 477 U.S. at 580 n.11 ("the defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response").  This case went well "beyond challenging an agency's withholdings in response to a particular request" to establish plaintiff was entitled to declaratory relief by showing the agency employed a "policy or practice…that impaired its lawful access to information in the future." Dkt. 36 at 8, citing *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (emphasis removed).

While the time spent on this FOIA matter has been substantial, hours spent by Plaintiff's counsel are reasonable in light of the need to anticipate and respond to the full range of defenses presented at every stage of this litigation, and explicit Congressional rejection of the tactics and theories used by the Department of Justice to thwart FOIA's fee shifting provision. Open Government Act of 2007, S. Rep. No. 110-59 (2007).  This litigation has been contentious, but the hours set forth in the detailed time sheets were reasonably spent anticipating and overcoming tenacious tactics in defense of unlawful withholdings and policy that Defendants did not defend on its merits. Dkt. 36 at 8.  Ultimately, the Response presents no cognizable defense to the FOIA Fee Motion, and COWPL may be properly awarded the full lodestar calculation.

## 2. The Response Fails to Rebut the Presumption of Reasonableness of COWPL's Evidence and Lodestar Calculation.

Instead of declarations regarding the case at bar, the Response relies heavily on inapposite precedent and an unsupported, disjointed attack on COWPL's lodestar amount that does not defeat or even rebut the presumption of reasonableness. See *Del. Valley***Error! Bookmark not defined.** *Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The facts of each FOIA case, not unreliable precedent, requires courts to "exercise their discretion as

conscientiously as possible, and state their reasons as clearly as possible." *Copeland*, 641 F.2d 880, 893, (D.C. Cir. 1980) (en banc). The Response proffers no evidence to rebut detailed billing statements and declarations "of sufficient detail and probative value" to allow the court to determine with "a high degree of certainty that such hours were actually and reasonably expended." See *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir.1989) (per curiam).

Instead of rebuttal evidence, "Defendant's criticisms are of the 'nit-picking' variety which this Circuit has warned against." See *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1337-38 (Tamm, J., concurring) ("Neither broadly based, ill-aimed attacks, nor nit-picking claims by the Government should be countenanced.").  The Response fails to acknowledge that the United States could have avoided liability for the majority of Plaintiff's statutory attorneys' fees now claimed by agreeing to settle the policy claim. See, e.g. Dkt. 36 at 2-8 (describing in detail agency conduct evading FOIA compliance throughout the administrative stage and vigorous litigation tactics by Defense counsel).

a.   *COWPL achieved a high degree of success.*

The Response argues that a significant reduction to the lodestar is warranted based on "limited success." Dkt. 52 at 6 quoting *Hensley*, 461 U.S. at 436. The Response argues that "the most critical factor is the degree of success obtained," explaining that "[t]his factor is particularly crucial where a plaintiff is deemed 'prevailing' even though [it] succeeded on only some of [its] claims." *Id.* quoting *Hensley*, 461 U.S. at 434.

COWPL substantially prevailed on all of its claims. Dkt. 51 at 16 citing Dkt. 36 (order granting relief on the claim of unlawful withholding through unlawful search, withholding, and policy/pattern) accord Dkt. 1 at ¶¶83-89.  *Hensley*, the key precedent relied on in the Response, cuts against the argument that a significant reduction to COWPL's requested fees is warranted for "limited success" on specific motions. See *Hensley*, 461 U.S. at 436.  Although each motion

may not have been won, reasonableness in prosecuting the litigation is established by Plaintiff's

ultimate victory in accessing responsive, previously withheld records and obtaining a judicial

declaration that the policy used to withhold those records is unlawful. Dkt. 30.

> Plaintiff need not win every battle in order to recover reasonable attorneys' fees and
> costs. After all, it is a rare litigant indeed 'who doesn't lose some skirmishes on the way
> to winning the war. Lawsuits usually involve many reasonably disputed issues and a
> lawyer who takes on only those battles he is certain of winning is probably not serving
> his client vigorously enough; losing is part of winning.'

 *Ashraf-Hassan v. Embassy of France in the United States*, 189 F. Supp. 3d 48, 61 (D.D.C. 2016)

quoting *Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991).

COWPL wholly prevailed on its claim that the Forest Service unlawfully withheld

records, and did so based on unlawful agency policy, which the Court construed liberally "so as

to do justice." Dkt. 36 at 27 (citations omitted) (finding that the agency unlawfully withheld

records under Exemptions 5 and 6 and its withholding policies violated FOIA); Dkt. 36 at

(agency policies clearly conflict with FOIA); Dkt. 44 (acknowledging that the "Forest Service

waived the white flag by releasing the remaining records" that the Court had determined were

unlawfully withheld).  The Court's Orders, and the searches and releases made throughout the

litigation, confirm that COWPL obtained a high degree of success of success on the claims at all

stages of this litigation, supporting the reasonableness of the requested fees.  The Response puts

forward no evidence to rebut this fact.[5]

> b.   *COWPL's lodestar calculation is reasonable given the unique legal
> arguments and factual requirements of this case.*

A primary basis of Defendant's Response appears to be that because the lodestar request

is significant, COWPL must have intentionally inflated its hours. Dkt. 52 at 52 at 12, 13, 26, 28,

---

[5]Although COWPL did not succeed in enforcing the settlement agreement, this avenue was
reasonably pursued in an attempt to gain the benefit of the compromise and avoid dispositive
briefing.  COWPL's voluntarily reduction reflects the Court's denial of the motion (see Dkt. 51
at 27), and subsequent failure of Defendant to defend the merits of the policies. ECF 36 at 8.

31 & 34.  Defendant offers no evidence to support this scurrilous assertion outside of the

AUSA's personal interpretation of the time COWPL should have spent on each task.  Very little

precedent exists addressing reasonable statutory attorneys' fees for litigation involving unlawful

agency FOIA policy, likely because these are not "garden variety" FOIA cases and plaintiffs

frequently do not prevail. See, e.g., *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 70-72

(D.D.C. 2016) ("[D]elay alone, even repeated delay, is not the type of illegal policy or practice

that is actionable under *Payne*," explaining that in a policy-or-practice case plaintiff show the

agency's actions are "done to delay requests."). These policy/practice cases are resource

intensive, involving unique issues of law and complex evidentiary requirements. See *Nat'l Sec.*

*Couns. v. C.I.A.*, 898 F. Supp. 2d 233, 252-53; 261 (D.D.C. 2012), aff'd sub nom. *Nat'l Sec.*

*Couns. v. Cent. Intel. Agency*, 969 F.3d 406 (D.C. Cir. 2020) (quoting *Better Gov't Ass'n v. Dep't*

*of State*, 780 F.2d 86, 91 (D.C. Cir.1986) (discussing evidentiary requirements and legal

framework required to establish pattern, practice, and policy FOIA violations); *Hajro v. USCIS*,

811 F.3d 1086, 1103 (9th Cir. 2015); *Eison v. Kallstrom*, 75 F. Supp. 2d 113, 117 (S.D.N.Y.

1999) (discussing unique plaintiffs confront questions with regard to mootness).

Where a plaintiff successfully overcomes substantial barriers and proves unlawful agency

FOIA policies, it follows that a substantial statutory fee award is reasonable. *See, e.g*., *Mayock v.*

*I.N.S.*, 736 F. Supp. 1561, 1562 (N.D. Cal. 1990) (twenty-five-year-old case where Plaintiff

establish that the INS employed an unlawful pattern and practice violating FOIA and awarding

Plaintiff's counsel $158,372.00 in statutory attorneys' fees and costs); *Jud. Watch, Inc. v. United*

*States Dep't of Homeland Sec*., 895 F.3d 770, 780 (D.C. Cir. 2018) (discussing "precedent on

policy or practice claims" in light of "chilling effect that litigation costs can have on members of

the public much less the burden imposed on the courts.").  COWPL's request is reasonable.

c.     *COWPL's efforts to settle this case are reasonable and compensable.*

There is no dispute that Plaintiff sought to avoid further litigation costs by good faith engagement in substantive settlement negotiations over a period of five months in 2022. Dkt. 25 at 1.  Yet, Defendant asks the Court to "award no fees for the unsuccessful settlement discussions, or at least reduce any fees award by fifty percent" because Plaintiff "plainly did not obtain full success with respect to settlement discussions that did not result in any settlement agreement." Dkt. 52 at 17.  The Response contradicts both legislative intent and legal precedent. See, e.g., *Weisberg v. U.S. Dep't of Just.*, 1987 WL 11984, at *11 (D.D.C. May 28, 1987), aff'd in part and remanded, 848 F.2d 1265 (D.C. Cir. 1988) (hours spent negotiating settlement were compensable); *Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149, 159 (D.D.C. 2015) (hours expended attempting to settle statutory attorneys' fees are compensable, even when such attempts at settlement ultimately fail).[6]  To adopt Defendant's position opposition to statutory fees for unsuccessful settlement efforts would effectively remove the incentive for plaintiffs to spend time engaged in FOIA settlement negotiations, greatly increasing the number of FOIA fee motions presented to the Court. See *Elec. Priv. Info. Ctr. v. Dep't of Homeland Security*, 197 F. Supp. 3d 290, 297 (D.D.C. 2016) (In FOIA fees litigation, the "Court encourages parties to resolve their differences without motions.").

Further, the Response overlooks that, after the motion to enforce was denied, Defendant chose to forego settlement negotiations and immediately renewed its summary judgment motion. Dkt. 52 at 9.  COWPL sought judicial involvement to vindicate Plaintiff's statutory rights and prepared the cross motion that ultimately gained a better result than contained in the settlement.

---

[6] The Response devotes three pages to analyzing one case the AUSA asserts was wrongly decided and wrongly permitted compensation for unsuccessful settlement. Dkt. 52 at 18 citing *Coffey v. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 172 (D.D.C. 2018).  Although the Fee Motion does not cite *Coffey*, the result supports COWPL, and the opinion includes no analysis of the relevant issues or the notion that unsuccessful settlement negotiations are never compensable.

Dkt. 36 at 10 ("On the merits, the Court finds that the Service's current policies do not comport with FOIA's requirements and thus will grant COWPL's motion and enter a declaratory judgment in its favor.").  Full compensation for all hours spent engaging in settlement negotiations is particularly apt since COWPL gained judicial relief on the offending policies. *Id*.

        d.     *Work billed by the two attorneys in this case is reasonable, appropriate, and compensable.*

Defendant, without pointing to any specific time entries or providing rebuttal evidence, asserts that COWPL's use of two attorneys to litigate this matter resulted in "duplicative" work and "overstaffing," (Dkt. 52 at 12, 22, 32, 37 & 42) warranting a lodestar reduction of up to 50%. Dkt. 52 at 33.  Generalized allegations that "fail to quantify how much duplicative time has been submitted are insufficient." *Hall v. Cent. Intel. Agency*, 115 F. Supp. 3d 24, 31 (D.D.C. 2015). See also *Env't Integrity Project v. Gen. Servs. Admin.*, 2021 WL 3464337, at *12 (D.D.C. Aug. 6, 2021) (finding four attorneys litigating a FOIA case was not duplicative and defendant pointed to no evidence of specific billing entries to establish that work was duplicative). See also *Rosenfeld v. U.S. Dep't of Just.*, 904 F. Supp. 2d 988, 1005 (N.D. Cal. 2012) ("Mere generalized allegations of unjustified billing not supported by specific citations to evidence in the record are insufficient to warrant a reduction in the lodestar figure.").

The Response fails to point to a single time entry to support its allegation of "overstaffing." Dkt. 52 at 33.  COWPL's unrebutted declarations and and detailed billing statements establish that litigation tasks for which COWPL seeks to recover were reasonably undertaken, and the amount of time spent on such tasks was reasonable. Dkts. 51-2 to 51-4. Declarations submitted to the Court establish that Mr. Stills and Ms. Kane worked collaboratively to litigate this complex FOIA case. Dkts. 51-3 & 51-4. Mr. Stills, who began federal environmental practice in 1996, served as senior attorney. Dkt.51-3 at ¶¶2-7. As is common practice, Ms. Kane, a highly qualified but less-senior attorney (Dkt. 51-4 at ¶¶3-4)

billed at a lower rate. Dkts. 52-2 to 52-4. See e.g., *Sierra Club v. United States Env't Prot. Agency*, 2021 WL 7210058, at *5 (D.D.C. Mar. 31, 2021).  The Response does not contest that Defendant also relied on multiple attorneys to litigate this case. *See e.g.*, Dkt. 22-1 (Hudek Decl), 22-2 (Graham-Oliver Decl).  Plaintiff should not be penalized for the same.

    e.  *Defendant's proposed reductions to the lodestar amount are confusing, arbitrary, and meritless.*

The Response promotes a confusing assortment of proposed reductions to COWPL's presumptively reasonable lodestar by characterizing Plaintiff's success on specific litigation skirmishes as the basis for the hours the AUSA believes should have been spent to win the war.[7]

By way of example and not limitation, on the merits of the case, the Response asks the Court to: (a) deny COWPL's fees entirely due to overbilling (Dkt. 52 at 11); (b) reduce hours spent on complaint by 66% (Dkt. 52 at 14-15); reduce hours spent on seeking a mutually acceptable briefing schedule by 87.5% (Dkt. 52 at 8-9); award no fees for settlement negotiations (Dkt. 52 at 17) and the motion to enforce (Dkt. 52 at 21); reduce hours on summary judgment briefing by 33% (Dkt. 52 at 21-22); reduce hours spent on the first round of summary judgment briefing by 50% (Dkt. 52 at 23); and award no fees for the court-invited second summary judgment motion (Dkt. 52 at 24-25).

As for the pending Fee Motion, Defendant asks the Court to: (a) reduce COWPL's time by 20% for any aspect of the fee motion the Court finds "unnecessary" (Dkt. 52 at 28-29); reduce COWPL's time from "over fifty to a more reasonable thirty, i.e., by forty percent" for all hours billed on the motion for "limited success" (Dkt. 52 at 29-30); and (c) award "no time" or reduce

---

[7] The miscellany of proposed reductions provides an illogical and contradictory approach. For example, the Response admonishes counsel for, on the one hand, spending too much time on litigation tasks (see e.g. Dkt. 52 at 14-15, 21-22) and on the other, for economizing by adapting research used in a fee petition from another recently-filed FOIA case (Dkt. 52 at 21-22).

compensation by $8,185.05 for COWPL's time spent preparing declarations because the AUSA believes detailed evidence is "unnecessary." Dkt. 52 at 30. The tenacious Response apparently seeks reduction, without evidence, by more than 100% of the presumptively reasonable lodestar amount established in the Fee Motion and declarations.

COWPL successfully litigated its claims. Defendant's unsupported percentage reductions are of the "'nit-picking' variety which this Circuit has warned against." *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1337-38. As Defendant admits (Dkt. 52 at 17-18), courts "'should not become green-eyeshade accountants' in examining fee requests since '[t]he essential goal ... is to do rough justice, not to achieve auditing perfection.'" *Elec. Privacy Info. Ctr. v. National Security Agency,* 87 F. Supp. 3d 223, 235 (D.D.C. 2015) (alteration in original) (quoting *Fox v. Vice,* 563 U.S. 826, 838 (2011)). Rather than adopt Defendant's over-the-top approach to proposed reductions, the Court may readily accomplish "rough justice" by entering an equitable judgment that awards Plaintiff's unrebutted and presumptively reasonable lodestar amount (Ex. 1 at ¶¶ 14, 16), an approach that achieves the Congressional intent and purpose in adopting fee-shifting provisions. See *City of Burlington v. Dague*, 505 U.S. 557, 568 (1992).

### 3.    Fees-on-Fees Hours are not Excessive.

As reflected in supporting documentation, it is undisputed that counsel for COWPL sought to avoid the involvement of the Court in resolution of statutory fees and costs. Dkts. 51-2 to 51-4. However, Defendant predicated negotiations on the frivolous position that Plaintiff's Fee Motion was untimely. *Id*., Dkt. 52 at p. 10). The tactic of floating a frivolous timeliness argument required Plaintiff to spend considerable time preparing its Fee Motion and declarations, and Plaintiff should not be penalized for diligence in preparing a well-supported Fee Motion on the facts and circumstances of this FOIA litigation.

The Response makes a baseless request to reduce the fees-on-fees lodestar based on the degree of success achieved in the substantive litigation. Dkt. 52 at 29.  However, Court should award the full lodestar fees-on-fees calculation based on the reasonableness of the compensable time spent litigating the Fee Motion. see *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec*., 982 F. Supp. 2d 56, 61 (D.D.C. 2013).

The Fee Motion confirmed that additional hours would be sought for later phases of the fees-on-fees litigation, including this reply. Dkt. 51 at 23. It is appropriate to update the lodestar calculation with the reply hours, and after any other major litigation milestone, such as a hearing, that would add to the loadstar fees-on-fees calculation. See *Wiley v. Portfolio Recovery Assocs*., LLC, 594 F. Supp. 3d 1127, 1148 (D. Minn. 2022) (approving fees for hours incurred responding to defenses) quoting *Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986).

This Reply, like every other aspect of this litigation, required significant time to respond to Defendant's attack on nearly every aspect of the Fee Motion.  This time is reflected in the attached supplemental billing statements for both counsels. Exs. 1 & 2.  Defendant's tenacious approach to this FOIA litigation supports the reasonableness of each entry. Ex. 1 (Travis Stills billed 35.3 hours); Ex. 2 (Maya Kane seeks 18.2 billable hours addressing the Response).

### 4.      Counsels' Hourly Rates are Reasonable

Defendant does not dispute hourly rates but instead argues that counsel for COWPL should not have spent any time briefing this issue, failing to acknowledge that the burden is on counsel for petitioner to justify reasonableness of requested rates. *Covington*, 57 F.3d. at 100.  In light of the facts of this case, and precedent showing that the Fitzpatrick Matrix is not always honored by federal defendants, establishing the hourly rate in the present litigation is warranted. ECF 51 at 23-246, See, e.g., *Hall v. Cent. Intel. Agency*, 115 F. Supp. 3d 24, 32 (D.D.C. 2015) (applying rates established by Laffey Matrix).  The use of Fitzpatrick Matrix rates is undisputed.

**C.       Total Loadstar Calculation, Costs, and Reduction**

Total compensable time from the outset of this case through this filing are set out in the

two billing statements for Maya Kane. Dkt. 52-4, Ex. 2.  The updated time sheet of Mr. Stills

addresses errors in his subtotals that do not impact the lodestar calculation (Ex.1) and contains

calculations supporting the final, discounted loadstar calculation of $354,295.20. *Id*. at ¶14-16.

## CONCLUSION

Plaintiff respectfully submits that the foregoing supports the statutory award of fees and

costs of $354,295.20, and any other relief that the court deems just and proper.

**RESPECTFULLY SUBMITTED ON August 15, 2024**

> */s/ Travis E. Stills*
> TRAVIS E. STILLS, D. D.C. Bar # CO0101
> Energy & Conservation Law
> 227 E. 14th St. #201
> Durango, Colorado 81301
> (970) 375-9231
> stills@eclawoffice.org
>
> MAYA KANE, D. D.C. Bar # CO0089
>  Southwest Water and Property Law LLC
> 10 Town Square, No. 422
> Durango, CO 81301
> (970) 946-5419
> mkane@swpropertylaw.com
>
> *Counsel for Plaintiff Colorado Wild Public Lands*